# Phœnix Insurance Co. *v.* Copeland.

*Action by Assignee, on Policy of Insurance against Fire.*

1. *Error without injury in rulings on pleadings.*—Sustaining a demurrer to a special plea, if erroneous, is not a ground of reversal, when the record shows that the defendant had the benefit of the same defense under other special pleas.

2. *Estoppel by admission or conduct of agent.*—If plaintiff, suing as assignee of a policy of insurance, was induced to purchase it after a loss had occurred, by the representations of an agent of the insurance company, through whom the policy was issued, and to whom he applied for information, stating his purpose, to the effect that the policy was all right, and that the loss would be paid, the insurance company is estopped from claiming that there had been a forfeiture, provided the agent had authority to make such admissions or statements; but mere authority to solicit and place insurance does not, of itself, confer on the agent power to bind his principal by such admissions.

3. *Representations as to incumbrances on insured property.*—If the assured, or his agent, in negotiating for a policy with the agent of the insurance company, truly stated the condition of the property, and exhibited the papers showing the nature and extent of the incumbrances

[Phœnix Insurance Co. v. Copeland.]

resting on it, the insurance company can not avoid liability on account of those incumbrances being in contravention of the stipulations of the policy.

4. *Representations as to insurance on other property.*—When one of the conditions of a policy declares that it shall be void, if any other insurance on the property exists or is effected without the consent of the insurance company, the existence of another policy at the time avoids it, though it was unknown to the assured.

5. *Testimony of agent as to extent of authority.*—An agent should be allowed to testify as to the extent of his powers, when it becomes material, in an action on a contract made by him for his principal.

6. *Evidence as to value of house, and cost of rebuilding; and how proved.* When the policy reserves to the insurance company the option of re-building, and makes the cost of rebuilding one of the criteria of its liability, the value of the house and the cost of rebuilding are pertinent inquiries; and they may be proved by the opinion of an expert, based on the parts left standing and the description given by other witnesses.

7. *Cross-examination of witnesses.*—Much latitude is allowed in the cross-examination of a witness, not only with a view to his direct impeachment, but for the purpose of testing his accuracy and impartiality.

8. *Relevancy of evidence as to collateral or immaterial inquiry.*—A witness, testifying as to his own conduct or statements on a particular occasion, may deny the statements of another witness as to what he said or did, though the matter be collateral and immaterial; but it is not permissible to sustain him by the testimony of other witnesses, thereby impeaching the opposing witnesses as to such collateral or immaterial matter.

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. JOHN M. CHILTON, as special judge.

This action was brought by Alpheus T. Copeland, as assignee of Mrs. Dora Roberts, against the appellant, a New York corporation doing business, through its agents, in Alabama; and was founded on a policy of insurance against loss by fire, which Mrs. Roberts had effected with the defendant, "to the amount of $1,500, on her one-story frame dwelling-house, occupied by her as a family residence, situated on her plantation three miles from West Point, Georgia, on the road leading to Fredonia, Alabama." The policy was dated February 1st, 1887, and was for the term of one year. The negotiations between the parties were carried on through John T. Roberts, husband of Mrs. Dora Roberts, acting as her agent, and W. S. Jackson, as agent for the defendant. The policy contained a stipulation, that it should be void, "if the assured shall have, or shall hereafter make, any other insurance on the said property, or any part thereof, whether valid or not, without the consent of this company written thereon; or if the said property, or any part thereof, is mortgaged, or otherwise incumbered, either prior or subsequent to date hereof, without the consent of this company written hereon;" and it reserved to the insurance company the right to rebuild,

[Phœnix Insurance Co. v. Copeland.]

and limited its liability, in the event of loss or damage, to "three-fourths of the cash market value of the property at the time immediately preceding such loss or damage; the amount of loss or damage to be estimated according to the actual cash value at the time, and to be paid sixty days after proof of loss," &c., "unless the property be replaced, or the company shall have given notice of their intention to rebuild or repair the damaged premises." The house was destroyed by fire on the night of June 26th, 1887. The policy was assigned by Mrs. Roberts and her husband to plaintiff, by indorsement dated July 2d, 1887, for valuable consideration; and the action was commenced on the 24th September, 1887.

The defendant pleaded the general issue, and eleven special pleas; but demurrers were sustained to all of the special pleas, except the 9th, 10th, and 11th. The 9th plea averred that the policy was forfeited and void, because of misrepresentations made by said J. T. Roberts, as agent for his wife, in stating to defendant's agent, with whom he was negotiating for the issue of the policy, that there was no mortgage or incumbrance on the property, when in fact there were two outstanding mortgages, particularly describing them. The 10th plea claimed that the policy was void, because said Roberts, while negotiating for the policy, falsely represented to defendant's agent that there was no other insurance on the property, when in fact there was other insurance to the amount of $800. The 11th plea asserted that the house was "fraudulently or intentionally destroyed by fire with the knowledge and consent of the payee of said policy." To these pleas two replications were filed, which the court sustained on demurrer, and which are set out in the opinion of this court.

On the trial, as the bill of exceptions states, J. T. Roberts testified, as a witness for the plaintiff, that while negotiating with Jackson for the policy, being asked whether there was any mortgage or other incumbrance on the property, he showed Jackson the mortgage which he and his wife had executed to said Copeland, from whom they bought the property, and in which they assumed the payment of two other outstanding mortgages, and that Jackson expressed his satisfaction with the state of the title. Jackson, testifying as a witness for the defendant, denied this, and stated that said Roberts, in answer to his inquiries, said there was no mortgage or other incumbrance on the property. "Defendant asked said witness, whether he would have issued

the policy, if he had known that there was a mortgage or other incumbrance on the property; also, whether he had any authority to issue the policy sued on, on incumbered property;" to each of which questions the court sustained objections, and the defendant excepted. The bill of exceptions adds in this connection: "It was shown during the progress of the trial, that the only express authority of said witness was a printed power of attorney," which was produced, and which gave him "full power to receive proposals for insurance, against loss and damage by fire, in LaFayette and vicinity; to fix rates of premiums, receive moneys, and countersign, issue, renew, and consent to the transfer of policies of insurance signed by the president or the secretary of said company, subject to the rules and regulations of said company, and to such instructions as may be given from time to time by its officers."

The plaintiff introduced one Johnson as a witness, "who was not a builder or contractor, but had known the said house for many years, and had been in it frequently," and asked him "what was the value of the building at the time of the fire;" and he answered, that its value was about $2,500. The defendant objected to this question and answer each, and excepted to the overruling of his objections. The plaintiff also introduced one Walker as a witness, "who was a carpenter and builder, and who testified that he knew the house burned, and that he estimated the cost of rebuilding it at $2,800." On cross-examination of the witness, having stated that he had built, with other houses, one in Chipley, Florida, for Mr. Charles Hardy, he was asked by defendant's counsel, "if he did not know that one Mitcham built that house for Mr. Hardy." The court sustained an objection to this question, and the defendant excepted. The defendant introduced Charles Stevens as a witness, "who testified that he was a large contractor and builder of houses, and was now engaged in that business; that he built many houses every year, and had recently built houses in West Point, Georgia, three miles distant from the house which was burned; that he knew the value of building material and labor there, and what they would cost where this house was burned; that he could tell the dimensions and size of the house from the pillows and marks on the chimneys, which were still standing; and that when he came to make an estimate of the cost of rebuilding, at the instance of the defendant, J. T. Roberts described the house to him in

detail. Defendant then asked said witness, what was the value of such a house as the one Roberts described." The court sustained an objection to this question, and the defendant excepted. "The defendant then stated to said witness, hypothetically, a house which, as defendant insisted, was substantially similar to the house which was burned, and asked him if he knew the value of such a house; to which he answered, that he did, and gave his opinion of its value. Defendant then asked him, what he offered to rebuild such a house for." The court sustained an objection to this question, and the defendant excepted.

The defendant introduced two witnesses who, on the night of the fire, were camping out some three or four hundred yards from the house, and who testified that, when they reached the house soon after the alarm of fire was given, they saw no one there but J. T. Roberts; that he was bare-footed, and had on a long night-gown, and said "that he had no time to get on his pants, being almost stifled with the smoke when he awoke;" that they asked him the time of night, and he said that it was after two o'clock, after pulling open his gown, and taking out his watch; and that in doing this they saw that he had his pants on under his gown. Roberts denied this—denied that he saw said witnesses at the fire, said that he did not have on his pants, and that he did not own or have a watch; and one Eady, another witness for the plaintiff, testified that said Roberts did not own a watch at that time. The defendant objected and excepted to the testimony of said Eady, and also of said Roberts, as to the latter's ownership of a watch.

The defendant asked the court, in writing, to charge the jury, that they must find for the defendant, if they believed the evidence; and excepted to its refusal.

The rulings of the court on the pleadings and evidence, and the refusal of the charge asked, are assigned as error.

W. J. SAMFORD, and H. C. TOMPKINS, for appellant.

N. D. DENSON, contra.

STONE, C. J.—The trial court sustained plaintiff's demurrers to pleas numbered from 3 to 7, inclusive. In pleas 9, 10, and 11, defendant set up, and with fuller statement of facts, all the defenses which had been attempted to be made in pleas 3 and 7. Demurrers to pleas 9, 10, and

11 were overruled, and under them the defendant had the benefit of every defense he could have made under pleas 3 to 7. We need not consider the propriety of the court's ruling in sustaining plaintiff's demurrers noticed above. If error, it was error without injury.—3 Brick. Dig. 405, § 20.

The Circuit Court sustained demurrers to pleas 8 and 12. The testimony shows there was nothing in them, and we will not consider them.

To pleas Nos. 9, 10 and 11, plaintiff filed three replications, to which there were demurrers. The Circuit Court sustained the demurrer to replication No. 1, and overruled it as to those numbered 2 to 3. Issue was then formed on the complaint as filed, pleas numbered 1, 9, 10 and 11, and replications numbered 2 and 3. The judgment overruling defendant's demurrer to replications 2 and 3, is the subject of separate assignments of error.

Replication No. 2 asserts that, after the burning, Copeland, the plaintiff, contemplated purchasing from Mrs. Roberts, the assured, the policy and the claim of compensation for the loss suffered by the fire; and before purchasing he consulted Jackson, defendant's agent, through whom the policy had been obtained. It avers that Jackson informed him the policy was all right, and that the loss would be paid; and that on the strength of such assurance he purchased the policy, and paid value for it. It avers further that Jackson "had authority to make such representation, and to bind the defendant by said representation."

The clause copied from the replication No. 2 constitutes it a complete answer to the defenses relied on. *Qui facit per alium, facit per se.* If the corporation had represented to Copeland that the policy was valid, and that the loss would be paid, and Copeland, on the strength of it, purchased the policy, parting with value for it; this would have estopped the corporation from setting up the defenses relied on. But, to bring the case within this principle, Copeland must have made known the purpose for which he made the inquiry. This the replication sufficiently avers.—3 Brick. Dig. 448, §§ 31, 33, 34. But the fact that Jackson was soliciting agent for the company, through whom the insurance was obtained, would not, of itself, bind the company by admissions made by him, not contemporaneous and connected with some authorized act of agency. Authority to solicit and place insurance, would not, without more, confer power to bind the company by the alleged admission. It

would require the equivalent of express authority to confer such power.—*Queen Ins. Co. v. Young*, *ante*, p. 424; 5 So. Rep. 116.

Replication No. 3 avers that, in soliciting and obtaining the insurance, Roberts represented and acted for his wife; and that before obtaining the insurance, he laid before Jackson the soliciting agent, the papers showing the nature and extent of the incumbrances resting on the property, and that with full information on the subject, Jackson procured the policy to be issued. This, if true, brought home to Jackson's knowledge the true condition of the title, contemporaneously with the acts done by him in placing the insurance. Jackson was agent for the insurance company, not for Mrs. Roberts; and if the company was in this way deceived in granting the policy, in contravention of their rules as to the state of the title, it could not defend against liability on that account.—*P. & A. Life Ins. Co. v. Young*, 58 Ala. 476; *Com. Fire Ins. Co. v. Allen*, 80 Ala. 571; *Ala. Gold Life Ins. Co. v. Mobile Mut. Ins. Co.*, 91 Ala. 329, and authorities on the briefs of counsel.

We find no available errors in the rulings on demurrer.

While we hold the second replication to be sufficient as pleaded, it will be utterly worthless, if there is a failure to show Jackson's authority to bind the company by the admission he is alleged to have made. The other insurance on the dwelling will then become a controlling question in the case. It is not pretended that Jackson, or the company, was notified of this. If that insurance in fact existed, and if the estoppel is not made good under the rules declared above, then the failure to notify Jackson or the company of its existence is fatal to this suit. If Roberts and Mrs. Roberts did not know of its existence, it was their duty to inform themselves, and thus have avoided all excuse for asserting there was no other insurance on the property. *Munroe v. Pritchett*, 16 Ala. 185; *Claghorn v. Lingo*, 62 Ala. 230.

In the rulings on the admission and rejection of testimony the Circuit Court committed errors. Whether Jackson had authority to bind the company by the statement he is alleged to have made to Copeland, to the effect that the company conceded its liability for the loss, and agreed to pay it, was one of the inquiries of fact which the pleadings raised. He should have been allowed to testify as to the extent of his powers. So, the value of the house, and what

[Central City Insurance Co. v. Oates.]

it would have cost to replace it, were pertinent inquiries. The policy reserved to the insurance company the option of re-building, and made the cost of such re-building one of the criteria of liability in case of loss. The witness Stevens, if believed, showed himself to be an expert; and the pillars and marks on the chimneys left standing, enabled him to determine the dimensions of the house. He should have been allowed to testify as to its value, and the cost of re-building it, as matter of judgment, if he had heard its description by other witnesses, and as matter of skilled opinion, when submitted to him hypothetically.

The question asked Walker, on cross-examination, should have been allowed. Much latitude is indulged on cross-interrogation of a witness, for the purpose of testing his accuracy and impartiality. Cross-examination with a view to direct impeachment is not the limit of the right. Many questions may be put, which can not be made the ground of impeachment by disproof of the truth of the answer the witness may make.—3 Brick. Dig. 829, § 111.

So, in regard to the watch. Two witnesses testified, that Roberts drew out his watch, and told them the time of night. That was a collateral circumstance, and immaterial to the main inquiry. Yet, it was competent for Roberts, in his testimony, to deny it; and as giving it emphasis, to say he had no watch. This, however, did not justify proof by Eady, that Roberts did not own a watch. It was, at best, but an attempt to sustain Roberts and to impeach the opposing witnesses, by attacking a part of their testimony that was not material to the issue.—3 Brick. Dig. 828, § 101.

Reversed and remanded.