[Capital City Insurance Co. v. Caldwell Brothers.]

# Capital City Insurance Co. *v.* Cald-well Brothers.

*Action on Policy of Insurance against Fire.*

| 95 | 77 |
| 96 | 512 |
| 95 | 77 |
| 110 | 213 |
| 95 | 77 |
| 112 | 424 |
| 95 | 77 |
| 119 | 446 |

1. *Ownership of insured property; representations as to, and proof.* In an application for a policy of insurance on a storehouse, a statement or representation, in answer to one of the printed questions, that the applicant has a "fee-simple title," only means that he owns the absolute beneficial interest, as contradistinguished from a limited, qualified, or conditional interest; and in an action on the policy, he may testify that he bought and owned the property, without producing his deed, or proving payment of the purchase-money.

2. *Notice and preliminary proof of loss.*—Notice and preliminary proof of the loss having been promptly furnished, and no objection made to them in reply, after which the company's adjuster was sent to the place, who only objected to the valuation of the property as excessive, and insisted that the counters and shelves were not insured as a part of the house, this amounts to a waiver of all objections to the sufficiency of the notice or preliminary proof.

3. *Counters and shelves as part of storehouse.*—Counters and shelves in a storehouse may be insured as part of the house itself, when built or let into the walls or frame thereof, though not expressly mentioned in the application or the policy; and it is for the jury to determine from the evidence whether they are part of the house or not—whether they are movable or immovable fixtures.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

This action was brought by Caldwell Brothers, a mercantile partnership doing business at Scottsboro, Alabama, against the appellant, a domestic corporation, whose principal place of business was at Montgomery; and was founded on a policy of insurance of a storehouse at Scottsboro against fire, which the defendant had issued to the plaintiffs. The house was a two-story frame building, in which the plaintiffs carried on their mercantile business; and it was insured by the policy for $1,500. The policy was dated December 9th, 1884, and was for the term of one year. The house was totally destroyed by fire on Christmas night, 1884, and the action was brought on the 17th September, 1885. The complaint contained a single count, which was in the form prescribed by the Code, Form No. 13, p. 792. The defendant filed five pleas, but a demurrer was sustained to the 5th plea, and its sufficiency is not considered by this court, though presented by the assignment of errors. The

first plea alleged generally that "the facts stated in the complaint are not true." The 2d plea alleged that one of the conditions of the policy required that the insured should, "within fifteen days after loss accruing, give written notice thereof to defendant, and render to defendant on oath, within sixty days after such loss, a particular account of such loss, stating the time, cause, and circumstances of the fire, the occupation of the building insured, and the value of such building; and that plaintiffs had not complied with this condition. The 3d plea alleged that the plaintiffs' application for insurance stated that the amount of insurance asked on the building was not more than three-fourths of its cash value, and that $1,500, the amount of the policy, was more than three-fourths of the value of the property. The 4th plea alleged that the policy contained a provision giving the insurance company an option, in the event of a loss, to rebuild the house, and that the plaintiffs would not assent to such rebuilding, on the defendant's offer to rebuild within a reasonable time after the loss. Issue was joined on each of these pleas.

On the trial, as the bill of exceptions shows, the plaintiffs offered the policy in evidence, the first provision of which was in these words: "The application and statements of the assured, concerning the risk, are the basis of this contract; and any misrepresentation, or omission to make known every material fact concerning the risk, shall vitiate this policy; . . . and if the exact interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, be not truly stated in the policy, then this policy shall be void." Another provision in the policy was in these words: "(5.) Persons sustaining loss or damage by fire shall forthwith give notice of such loss, and shall, as soon as possible thereafter, render preliminary proof, giving an accurate and particular account of such loss or damage, signed and sworn to by them, and shall produce such other evidence, and submit to such examination, as the manager or any person appointed by this company may require; which statement shall be accompanied with a certificate from a magistrate or notary public nearest to the place of fire, . . that he has examined the circumstances attending the loss, and verily believes that the assured has honestly and through misfortune sustained a loss on the property insured; and until such proof, declaration and certificates have been produced, and such examinations as may be required have been permitted by the claimant, the loss or any part thereof shall

not be due or payable." The policy also contained a provision giving the company the option to rebuild in the event of a loss. The policy was signed by the president and secretary of the defendant company, but beneath their names was written a memorandum in these words : "Dated at Huntsville, Ala., this 9th December, A. D. 1884, and issued there;" and this was signed, "*H. B. Dillard*, secretary, agent for said company."

The application for the policy, which was read in evidence by the defendant, was made out on one of the printed forms of the Home Protection Company of North Alabama, but the name of that company was erased, and that of the defendant in this case substituted. The application was made out by W. G. Stuart, who was the agent at Scottsboro of said Home Protection Company, and it was forwarded by him, by mail, to said H. B. Dillard, the secretary of said company at Huntsville. In the printed part of this application it is stated, that the answers and statements therein made "form part and parcel of the policy, as well as the warranty of the applicant." The original application was sent to this court for inspection, and the opinion states the material facts shown by it. There was no objection to the admission of the application and the policy, or either of them, as evidence.

The plaintiffs proved that, on the day after the fire, they sent a letter by mail to said Dillard, at Huntsville, and another on the 22d February, 1885, in reference to the matter. The first letter was in these words : "Our storehouse, for which we hold insurance policy in the Capital City Insurance Company, No. 6,529, to the amount of $1,500, was burned last night; cause unknown. Please accept this as notice, and advise us of proper steps for a settlement." The other letter was in these words : "To-day is the 59th day since we were burned out. Your adjuster has not yet been here. What does he intend to do? or what more does he want us to do? We received a letter saying that he would be here last week, but we have not seen him. Please let us have some satisfaction in regard to this matter, as we think we have waited long enough." The plaintiffs proved, also, that some time in March, 1885, J. B. Abrams, the adjuster of the defendant company, came to see them at Scottsboro, accompanied by a contractor, who made an estimate of the cost of rebuilding; but nothing came of this interview, as the adjuster insisted that the counters and shelves were not included in the policy, and would not include them in the estimate of the cost of rebuilding; and he

further insisted that the house was over-valued in the policy. The plaintiffs offered in evidence, also, a letter which they had received from said Abrams, dated at Montgomery, April 1, 1885, in these words: "The papers sent by you, under date of March 21st, purporting to be proofs of loss under your policy, No. 6,529, have been referred to me. I beg to say in reply, these papers are wholly insufficient as such proof of loss required of you under the conditions of the policy. You say the value of the building was about $2,400, without the plan, or specification, or any particular statement or estimate, showing how this amount had been reached. Based upon the paper you have submitted, the company has no means of testing the correctness or incorrectness of the value you fix upon the building in question. The company requires the plan and specifications of the building in detail, and the papers you have sent in are therefore held at the company's office subject to your order. You are respectfully referred to the 5th paragraph of your policy."

E. H. Caldwell, one of the plaintiffs, was examined as a witness in their behalf, and his testimony, in the form of question and answer, is set out in full in the bill of exceptions; two exceptions reserved being thus stated: "Q. To whom did the building belong?' A. 'Caldwell Brothers. (Defendant objects, objection overruled, and defendant excepts.)" "Q. 'What did you do after this [that is, sending the first letter] in reference to having a reference made?' A. 'I made a sworn statement.' (Defendant objects, objection overruled, and defendant excepts.)" Other parts of the testimony of said Caldwell are copied in the opinion of the court, and other exceptions to rulings on evidence were reserved, but they are not assigned as error.

The court instructed the jury as follows: (1.) "It is incumbent on the plaintiffs to prove to your satisfaction that, after the fire, they gave notice of their loss to the defendant or its agents, and as soon thereafter as possible their preliminary proofs, giving an accurate and particular account of such loss or damage, signed and sworn to by them, accompanied by a certificate from a magistrate or notary public, certifying that he examined the circumstances, and verily believes that they have honestly, through misfortune, sustained a loss on the property insured ; or prove to your satisfaction that the defendant, through its agents, received notice of such loss and proofs as stated. And if you believe from the evidence that Abrams was adjuster for defendant, with authority to adjust such loss, and went to Scottsboro,

and tried to adjust such loss with plaintiffs, and did not insist on non-payment because of absence of proof of loss and want of notice as required by the 5th condition of the policy, you may look to such visits, &c., to ascertain whether defendant did in fact waive such proof of loss and notice required as above stated." (2.) "If you believe from the evidence that the counters and shelves were built along with the storehouse and as a part thereof, by being fastened to the sleepers, and could not be removed without injury to the house; then they are not fixtures, but a part of the building, and are embraced by the policy. But, if you believe they were not so built, but were merely [*laid?*] upon the floor and attached against the walls, and could be removed without injury to the house; then they are fixtures, are not a part of the building, and are not embraced in the policy."

The defendant excepted to each of these charges, and asked fifteen charges in writing, duly excepting to the refusal of each. The first of these charges was the general charge on the evidence, the third is copied in the opinion, and the others were in these words:

(2.) "Under the terms and conditions of the policy, it was necessary and incumbent upon plaintiffs to state their exact interest in the property, whether as owners or otherwise. The interest of Snodgrass, according to the evidence, had not been divested out of him, and the statement made by plaintiffs, that they had the fee-simple title, avoids the policy, and the verdict of the jury should be for the defendant."

(4.) "If the jury find from the evidence that the plaintiffs, in the application for insurance, state they had the fee-simple title to said building, and it is not shown that Snodgrass conveyed his interest to George Caldwell, or Caldwell Brothers, by a proper deed of conveyance, then the fee-simple title was not vested in Caldwell Brothers, the policy is void, and the plaintiffs can not recover."

(5.) "If the storehouse insured by said policy was occupied by Caldwell Brothers, and not by Snodgrass & Caldwell, the plaintiffs are not entitled to recover, and the verdict of the jury should be for the defendant."

(6.) "The plaintiffs are required by the conditions of the policy, in connection with the preliminary proof giving an accurate and particular account of the loss or damage, signed and sworn to by them, to send to defendant a certificate from a magistrate or notary public, nearest to the place of fire, and not concerned in any way in the loss, or

related to the plaintiff, certifying that he has examined the
circumstances attending the loss, and verily believes that
the plaintiffs have honestly, and through misfortune, sus-
tained a loss on the property insured. There is no evidence
that the plaintiff complied with this condition of the
policy; and for this reason the plaintiffs are not entitled to
recover, and the verdict of the jury should be for the de-
fendant."

(7.) "Under the conditions contained in said policy, it
was optional with the defendant to repair, rebuild, or re-
place the property with other of like kind and quality within
a reasonable time, on giving notice of their intention to do
so. If the defendant offered to so rebuild, and the plaintiffs
refused to permit such rebuilding, unless the defendant
would furnish shelving and counters, the plaintiff can not
recover in this case, as the shelving and counters were not
insured under said policy."

(8.) "The deposit in the post-office of a statement of the
preliminary proofs, as required by the policy, at Scottsboro,
Alabama, and addressed to H. B. Dillard, secretary, or to
Home Protection Insurance Company, as agent, was not a
delivery of such proof to them, and could not operate to
fulfill the requirements of the contract, that such proofs of
loss should be rendered to the company."

(9.) "There is no evidence in this case that the defendant
has waived the conditions in said policy requiring the
plaintiffs to render preliminary proofs of the alleged loss,
giving an accurate and particular account of such loss,
signed and sworn to by them, accompanied by a certificate
from a magistrate or notary public, as provided by the said
policy."

(The 10th charge, as copied in the transcript, is not in-
telligible.)

(11.) "The preliminary proofs should have been sent to
the defendant, at Montgomery, Alabama, and not to the
Home Protection Insurance Company, at Huntsville, Ala.,
or to the secretary of said Home Protection Insurance
Company, H. B. Dillard."

(12.) "The letter purporting to have been written by J.
R. Abrams, dated Montgomery, Ala., 4–1, 1885, is not
evidence in this case."

(13.) "Under the terms of the policy, the ascertainment
of the amount of the loss, by Mr. J. R. Abrams, the ad-
juster, did not decide or fix the liability of the defendant,
and no question can arise, in this case, as to defendant's

waiving any condition required by the contract of insurance, to be performed by the plaintiffs."

(14.) "The answers made by the plaintiffs to the questions propounded in the application, are warranted by them to be true, whether material or not; and if any of said answers are found to be untrue, the policy is void, whether the answers are material or not, and the verdict of the jury should be for the defendant. The jury have nothing to do with the materiality of such answers.

(15.) "The plaintiffs are required under said policy, when sustaining loss or damages, as soon thereafter as possible to render preliminary proofs, giving an accurate and particular account of such loss or damage, signed and sworn to by them. There is no evidence that the plaintiffs have complied with this condition of the policy, and for this reason they are not entitled to recover; and the verdict of the jury should be for the defendant."

The charges given by the court, the refusal of the several charges asked, the two exceptions to the testimony of Caldwell as above stated, and the sustaining of the demurrer to the fifth plea, are assigned as error.

LAWRENCE COOPER, for appellant.—(1.) The application for the policy and the policy itself are to be construed together as parts of one and the same contract, each expressly referring to the other; and the statements in the application being in the nature of warranties, a misrepresentation avoids the policy, especially where it is as to a material matter.—1 Wood on Fire Insurance, § 50; May on Insurance, §§ 29,159; *Chaffee v. Insurance Co.*, 18 N. Y., 376. (2.) The interest of the assured in the property is material to the risk, and he is required to make a full and true statement of the facts relating to it.—*Williamson v. N. O. Fire Asso.*, 84 Ala. 106; *Western Asso. v. Stoddard*, 88 Ala. 606; 28 Central Law Journal, 6. The assured represented that they had a "fee-simple title" to the property insured, and their evidence fails to show that they had any legal title whatever. One of them may have had an equitable fee simple in the lot, but, if he had any conveyance, or written evidence of title, the fact was not proved. Snodgrass had an interest in the building, which he sold to one of the assured; but whether by written contract or by parol was not shown, nor was it shown that the purchase-money had been paid. The misrepresentation as to the title or interest of the assured avoids the policy.—*Phoenix Insurance Co. v. Browder*, 19 Amer. St. 326. Besides, exceptions were re-

served to the competency of the evidence as to the title of the assured, and these exceptions are assigned as error. (3.) The counters and shelves were not covered by the policy.—1 Wood on Fire Insurance, § 56. (4.) The instructions of the court as to the waiver of notice and proof of loss were erroneous.—*Insurance Co. v. Oates,* 86 Ala. 558; *Insurance Co. v. Young,* 86 Ala. 424. (5.) A complaint in the statutory form is a bare statement of legal conclusions, and a plea of the general issue imposes on the plaintiff the burden of proving all the material facts necessary to support those conclusions.—*Ala. Gold Life v. Mutual Insurance Co.,* 81 Ala. 329; 2 Greenl. Ev., § 404; 2 Wood on Fire Insurance, 519; 28 Central L. J. 5, 6.

HUMES & SHEFFEY, *contra.*—(1.) There was no special plea setting up a breach of warranty of title, and that defense was not available under the general issue.—Code, § 2675, and citations. (2.) There was no evidence whatever to support the second plea, the conditions of the policy as to notice and proof of loss being substantially variant from the allegations of the plea. (3.) The only objection made by the adjuster to plaintiffs' notice and proof of loss was, that the plans and specifications of the building were not furnished; and this was a waiver of all other objections, if any existed.—*Insurance Co. v. Felrath,* 77 Ala. 201; 5 Lawson's Rights and Remedies, 3544. The adjuster afterwards went to Scottsboro, accompanied by a contractor, to whom a particular description of the destroyed building was submitted, with a view to estimates for re-building.—*Insurance Co. v. Oates,* 86 Ala. 569; *Insurance Co. v. Allen,* 80 Ala. 571; *Badger v. Insurance Co.,* 49 Wisc. 389; *Fisher v. Crescent Insurance Co.,* 33 Fed. Rep. 544; 7 Amer. & Eng. Encyc. Law, 1054; 11 *Ib.* 341. The notice and proofs of loss submitted by plaintiffs were in the defendant's possession, and were not produced on the trial. (4.) The shelves and counters, if part of the building, were covered by the policy; and the question whether they were part of the building was properly submitted to the jury.—*Tillman v. DeLacy,* 80 Ala. 103; *Insurance Co. v. Allen,* 80 Ala. 578; 27 Mich. 289; 8 Amer. & Eng. Encyc. Law, 41–61. (5.) The policy described the insured building as occupied by Snodgrass & Caldwell, when in fact it was occupied by Caldwell Brothers; but defendant can not take advantage of this fact, since it was the mistake of its own agent.—*Assurance Co. v. Stoddard,* 88 Ala. 611; 84 Ala. 106; 11 Amer. & Eng. Encyc. Law, 302;

[Capital City Insurance Co. v. Caldwell Brothers.]

5 Lawson's R. & R. 3594. (6.) The letter of Abrams, the adjuster, was admitted without objection.

STONE, C. J.—All men know that, in cities and towns, business houses generally, and residences frequently, are constructed in such close proximity, that the loss of one by fire endangers others. It is on this account that fire-insurance companies, in placing their risks, take into the estimate what are called the exposures, and regulate the premiums they charge for insurance in reference thereto. So, if the building proposed to be insured be very valuable, and the sum to be insured be large, it is not customary to place the entire risk in one company, but in several. This, because if loss is suffered (and losses will be suffered), the burden will be distributed among many companies, and not left entirely to one, which it might crush. And when many buildings are so nearly connected, one with the others, as that the burning of one of them would be likely to set fire to the others, it is neither customary, nor in accordance with business principles, to insure them all in one company. And this, at last, is but carrying into practical operation the economic philosophy of insurance—the helpful participation and aid of the many in sharing the loss which casualty casts on one. A loss of ten thousand dollars might bankrupt one trader, while, if it were distributed among a hundred or more, it would scarcely be felt. In theory, all the premium-payers contribute their several contingents, which collectively make up the sum to be paid. This is the *rationale* of insurance.

The Home Protection Insurance Company had its business office in Huntsville, Alabama. The Capital City Insurance Company had its habitation in Montgomery, Alabama. The former was the Huntsville agent of the latter. This is not uncommon. It furnishes to insurance companies the opportunity, when large insurance is sought, or when application is made for insurance of two or more buildings, or their contents, which are situated in one block, or in dangerous proximity to each other, to distribute the risk, and thus escape an individual, heavy loss, which, if it fell on one company, might be very disastrous to its business aims.

The foregoing reflections are common knowledge. We have given expression to them, because, in our opinion, they shed light on several questions which the record before us presents for our decision. They tend to explain why it was that the storehouse, the subject of insurance in this

case, was insured in the Capital City Insurance Company; and why it was that the agent of the Home Protection Company was the agent or person through whom the insurance was obtained. The Home Protection Insurance Company, being a corporation, could not act as the agent of the Capital City Company, otherwise than through its officers or agents. Corporations can not act in any other way.

Caldwell Brothers were merchants, having their place of business in Scottsboro, Alabama, not far from Huntsville. Stuart, a resident of Scottsboro, was the agent at that place of the Home Protection Insurance Company. The Capital City Company had no agent at that place. The Home Protection was the Capital City's agent at Huntsville. Caldwell Brothers had obtained insurance on their stock of merchandise, and they made application to Stuart for insurance on the storehouse. We have no doubt that the preparation of the written application was largely participated in by him. Such is the usual custom. The merchandise insured in the Home Protection, being in the storehouse on which the insurance was sought, the burning of either would be apt to involve the destruction of the other. Hence the reasonable desire that two risks should be assumed by different companies, in order that, if loss ensued, it should not fall entirely on one company. We think we are in safe bounds when we suppose that when Caldwell Brothers applied to Stuart for insurance on the storehouse, the latter preferred the risk should be assumed by the Capital City Company, rather than that the double loss should fall on one company, in case of its destruction by fire; and that it was at his instance the policy was taken in the Capital City Company. The circumstances of this case furnish ample evidence from which the jury could infer that Stuart was the authorized agent of the Capital City Insurance Company, in receiving and forwarding the application. And if there were doubt of this, the conduct of the Capital City through its agents, after the fire, furnishes circumstances tending to show a ratification of the issue of the policy in this case. These, however, were questions for the jury. There was no error in receiving testimony of Stuart's agency in receiving and forwarding the application for insurance in this case, nor of any other act done by him, bearing on the merits of the present controversy.

When the application was made for insurance in this case, the general questions were propounded, and answered by one of the Caldwell Brothers. One question propounded was, "Have you fee-simple title?" The answer was, "Yes."

One clause of the application is in the following language :
"Said answers are considered the basis on which insurance
is to be effected, and the same is understood as incorporated
in, and forming a part and parcel of the policy, as well as
the warranty of this applicant." A question was raised on
the trial as to the title held by Caldwell Brothers in the lot
on which the storehouse stood, and as to the manner of
proving that title.

The complaint filed by plaintiffs consists of a single
count, which is a substantial copy of Form 13 of the Code,
p. 792. The case was tried on issues raised by four pleas.
The first plea is a general denial of the averments of the
complaint. The others are special pleas, but neither of
them specially raises the question of title. One of the
plaintiffs, while on the witness stand, was asked as to the
ownership of, and title to the lot on which the storehouse
stood. He testified that the building belonged to himself
and brother—Caldwell Brothers. In the cross-examination
the following questions were asked, and answers given : Q.
"You and your brother owned it?" (this storehouse.)   A.
"Yes. Snodgrass and I built it, and then my brother took
his place."   Q. "Did you do it in writing?"   A. "No."   Q.
"From whom did you buy the lot?"   A. "A man named
Hugh Bynum."   Q. "Did he make you and Snodgrass a
deed for it?"   A. "I dont remember. I gave him a horse
for the lot. Snodgrass sold his interest to my brother
George."   Q. "Was that contract in writing between Snod-
grass and G. B. Caldwell?"   A. "I am not certain. I think
it was."   Q. "Have you the paper with you?"   A. "No."
Q. "Where is it?"   A. "I reckon it is at home, or de-
stroyed."   Q. "What is your best recollection about it?"
A. "I know that when we traded for the accounts, there
was a written contract between Snodgrass and myself, but
as to the lot, I dont remember whether there was or not."
Q. "If there was any deed made, you do not know it?"   A.
"So far as the house and lot were concerned, I could not
say whether there was a scratch of the pen."

The foregoing is substantially all the evidence bearing on
the question of ownership in, or title to the lot on which
the storehouse stood. The defendant corporation asked
charges based on the question of title. One of them is in
the following language :   "It is not shown in this case that
the plaintiffs had the fee-simple title to said property so
insured ; and for this reason they can not recover in this
case, and the verdict of the jury must be for the defendant."
There was an exception reserved to the refusal to give this

charge. There had also been objection and exception to Caldwell's testimony, that the building belonged to himself and brother.

In a suit at law founded directly on land-ownership, nothing less than what the law calls a legal title will sustain the action. Either a paper title, ten years adverse enjoyment, or something equivalent, must be shown. But this suit does not bring the title to the property directly in issue. It is not necessary that the complaint shall aver a title. That question comes up collaterally and defensively. Ownership is a material factor in assuming insurance risk on improved real estate, but not because the evidence of the ownership is considered. The extent of the ownership is the important element of inquiry. This, because the law, voicing common experience, presumes that the absolute owner of property will be more watchful of its preservation, than would a mere tenant, or one owning only a partial interest. And this watchfulness would be scaled, not by the form of the title, but by the extent of ownership. One owning a perfect equity in improved real estate would feel the same solicitude in preserving it, as he would feel if he held the legal fee.

In *Phoenix Insnrance Co. v. Browder,* 67 Miss. 620—s. c., 19 Amer. St. Rep. 326—the defense attempted was the same as that relied on in this case. True, there was some writing in that case, but it fell short of creating an estate in fee simple. The court said: "What is meant by the words "absolute fee-simple title" in this connection? It can only mean that the assured did not have a limited interest in the property, but that he claimed and held under a deed of conveyance, or other evidence of title, purporting to invest them with an estate in fee simple. It can only mean that the assured held under a paper title conferring on them this sort of estate, as contradistinguished from any limited and inferior one. The reason for this distinction is obvious. The insurer will not deal with, nor take the great risk of indemnifying against loss and damage, a mere tenant, lease-holder, or other person claiming and having only some qualified interest in the property; but this contract for indemnity will be made only with the person having the title—the beneficial owner—the person having the absolute, *i. e.,* the vested, as opposed to the contingent or conditional title."

True, in the case from which we have quoted, there was some sort of paper title, but it did not convey the fee. It did not come up to the letter of the representation made in

the application.  It would not have supported an action of ejectment for the property.  But we can not suppose that the court rested, or intended to rest its judgment, on the fact that there was a paper.  The true ground of the decision is expressed in the declaration by the court, that "It [the assertion that the assured had a fee-simple title] can only mean that the assured did not have a limited interest in the property."  We fully approve the following language of the Mississippi court, found in the opinion from which we have been extracting: "By the insertion of those words [fee-simple title] in the condition of its policies, can it be successfully maintained that the insurance company meant that every loss occurring under its policies, in which the assured should be unable to show a title indefeasible and good against the world—a title free from every defect, real or seeming, and on which not the smallest cloud rested—should be borne by the assured?  To tolerate such an opinion would be equivalent to holding that the company had deliberately set a trap to ensnare the simple-minded and unwary.  .  .  .  We can not believe that any honestly directed and fair-dealing company will deliberately undertake the management of its business on such basis."

In the case before us, we can not know what the true state of the title was.  The pleadings had given no notice that any question would be raised on the title to the lot on which the storehouse stood.  The main issue raised by the pleadings was, whether the storehouse had been destroyed by fire, in such manner as to fix a liability on the insurance company therefor.  As we have said, the extent of ownership held by the assured in the building was the material inquiry, because such interest stimulates solicitude and watchfulness in its preservation.  The interest, not the evidence of it, is the stimulus.  We find no error in the rulings of the court on the question of the ownership of the property, or the testimony by which it was established.

Questions were raised on the sufficiency of the proofs of loss.  We are not informed precisely what the proofs were.  After they were furnished, the adjuster visited the premises, and made and submitted an estimate of the cost of rebuilding.  It is not pretended that, either at that time or before, he made any objection for the want of timely notice of the loss, or that he complained of the insufficiency of the preliminary proofs, except on a single ground, which we think was untenable.  The main objection he urged, when he visited the place, had reference to the counters and shelving, to bee onsidered further on.  This, under all the

authorities, must be regarded as a waiver alike of notice of loss, and of the insufficiency of the preliminary proof.—*Fire Ins. Co. v. Felrath*, 77 Ala. 194; *Badger v. Glenn Falls Ins. Co.*, 49 Wis. 389; 7 Amer. & Eng. Encyc. of Law, 1054; 11 *Ib.* 341; *Central City Ins. Co. v. Oates*, 86 Ala. 558–68–9; *Com. Fire Ins. Co. v. Allen*, 80 Ala. 571.

The claim for the counters and shelving, testified to have been burned with the building, presents the only remaining question we need consider. The testimony is that they were framed and built with the building, and were not movable fixtures. They were not named separately, and were not insured, unless they constituted a part of the storehouse. The primary meaning of the word *fixture* is, "that which is fixed or attached to something as a permanent appendage." In law it takes a wider range. Anything fixed or attached to a building, and used in connection with it, is a fixture, whether it be a permanent appendage or not. Hence, in legal jurisprudence, there are movable fixtures and immovable fixtures. Whenever the appendage is of such a nature that it is not part and parcel of the building, but may be removed without injury to the building, then it is a movable fixture, and is a chattel. It is no part of the realty, and does not pass with a conveyance of the freehold. If, however, it be so connected with the building as that it can not be severed from it without injury to the building—a disturbance of its rounded completeness—then it is part of the realty, and it passes with the conveyance of the soil. Of course, these principles apply only when there is no agreement of parties varying these legal intendments.—8 Amer. & Eng. Encyc. of Law, 43, 61; Rapelje & L. Law Dictionary; *O'Brien v. Kusterer*, 27 Mich. 289; *Tillman v. DeLacey*, 80 Ala. 103, and authorities cited. It is manifest that, in this case, if the only testimony on the question be believed, a conveyance of the freehold would have carried with it the counters and shelves.

The insurance company had a printed form of application for insurance. The one made and used in this case has been sent up for our inspection. It contains many questions to applicants, so framed as to suit the various kinds of property, of which insurance against loss by fire is sought and obtained. The applicant is required to answer such of the questions as are applicable to the insurance risk he seeks. In this instance, the applicants sought insurance on a store building, which they valued at $2,300. The insurance obtained was $1,500. This is the only item of property to which any answer was made, although the form contained a

[Steiner Bros. v. Clisby.]

blank for "counters, shelves and drawers." Neither the policy nor the conditions annexed to it make any reference to these fixtures, but a pen-dash indicates that that question, together with many others, was regarded as immaterial. We hold the proper inquiry for the jury was, whether the counters and shelves were movable or immovable fixtures. If the former, they were not insured. If the latter, they were part of the storehouse, and were covered by the policy.

We need not apply these principles to the charge given, nor to the various charges refused. In none of its rulings did the Circuit Court err.

Affirmed.

WALKER, J., not sitting, having been of counsel.