# Liberty Insurance Co. *v.* Boulden.

# Scottish Union and National Insurance Co. *v.* Boulden.

### *Actions on Policies of Insurance against Fire.*

1. *Conditions in policy as to ownership of property insured; notice to insurer of true state of title.*—Plaintiff took out a policy of insurance against fire upon a building erected on land for which he held only a bond or obligation to make him title, on full and complete payment. The policy contained the provision that "this policy shall be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of the insurance be a building on ground not

owned by the insured in fee simple." When the policy was issued, and when the building was destroyed by fire, plaintiff had paid only one-third of the purchase-money for the land. In an action on the policy, *Held*, that said condition avoided the policy, unless the insurance company, or its authorized agent, was informed of the extent of plaintiffs interest in the land; and *Held*, further, that a statement by the plaintiff to the agent of the defendant that "I have no deed to this property, but only a bond for title," did not give information that the plaintiff did not hold unconditional and sole ownership.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

These two cases are alike in the pleadings, the evidence, and the rulings of the court. They were tried together, and the exceptions reserved apply to the two cases equally. There were separate verdicts and judgments, in each case for the plaintiff. The facts are sufficiently stated in the opinion.

LEA & BELL, for appellants.

CHISHOLM & WHALEY, contra.

STONE, C. J.—These were suits on policies of insurance against destruction or damage by fire to a wooden building, which is described in the policies. The complaint charges that the building was burned and totally destroyed on June 10, 1891, while the policies were of force. One defense to the action arose as follows: One clause of the policies provides that "this entire policy shall be void, if the interest of the insured in the property be not truly stated herein. This entire policy, unless otherwise provided by agreement endorsed hereon, or added hereto, shall be void, . . . if the interest of the insured be other than unconditional and sole ownership; or, if the subject of the insurance be a building on ground not owned by the insured in fee simple."

Boulden (and another, who subsequently sold his interest to Boulden,) purchased the ground on which the building was erected, by executory agreement dated May 31, 1888. One-third of the purchase-money was paid in cash, and the residue, $1000, was promised to be paid within one year from the date thereof. The purchasers bound themselves "to erect on some eligible portion of block 14, 'A,' [the property purchased] a hotel of one hundred rooms capacity, which shall be heated by steam and lighted by electricity, or other improved method of heating and lighting; said hotel to be in style and workmanship at least equal to the Lake View hotel situated at Lake View, near Birmingham,

in county and State aforesaid; . . . . that at any time after the roof of said hotel is raised, and on payment of the one thousand dollars above stipulated, the parties of the second part shall be entitled to demand and receive from the said party of the first part, who hereby binds itself to make same, a warranty deed in fee simple, with usual covenants, for said block No. 14, 'A,' and block 12, 'A,' with proper description thereof, provided said parties of second part shall first execute and deliver to said party of the first part their joint and several bonds in the penal sum of three thousand dollars ($3,000), with the condition thereunder written that said hotel shall be completed within twelve months from date," &c. The agreement contains several other stipulations to be performed by the purchasers.

These cases were tried in November, 1891, and the proof was that the one thousand dollars, residue of the purchase money of the lots, had never been paid, "but the proof showed that the house stipulated to be built was built, and was the house insured by these policies." As to the other stipulations of the agreement there was no testimony whether they had or had not been complied with. The foregoing is all the testimony, or its tendencies, bearing on the question of Boulden's title to or ownership of the lot on which the burned house stood, which is material to a correct decision of these cases.

It will be seen that, at the time the policies were taken out, "the interest of the insured" was "other [less] than unconditional and sole ownership," and that in fact he did not own a fee simple title in the property. This, unexplained and unrebutted, avoided the policies, and was a full defense to the present suits.

The explanation and rebuttal of this *prima facie* defense, which was offered and relied on by plaintiff in these cases, may be summarized as follows: Adams & Co. were, and for some time had been, insurance agents in Birmingham, Alabama. In January, 1889, the firm consisted of A. A. Adams, G. G. Adams, and one Tuttle. Before October, 1890, when the present policies were taken out, Tuttle had retired from the firm, and the business was then conducted in the same firm name, Adams & Co., by A. A. and G. G. Adams. Some time prior to January 30, 1889, Boulden had taken insurance from Adams & Co., as insurance agents, on the identical property, the burning of which is the cause of action in these suits. He addressed them the following letter by mail: "Middleburg, Ky., Jan. 30th, 1889. Messrs. Adams, Tuttle & Co., Birmingham, Ala. Dear Sirs: I forgot to tell you

that the land on which the houses you insured for me |stand|, I have only a bond for title, but the money that built them was mine. I forgot to tell you that I have no deed yet for this property, and thought I had best write you about it. If this makes any difference, please attend to it. Yours truly, C. M. Boulden." That this letter was received by Adams & Co. is fully proved by the fact that, on a search made at Boulden's request among the old papers of Adams & Co., the letter was found in an old file. Each of the persons who composed the partnership at the time the letter was written—A. A. Adams, G. G. Adams, and Tuttle—testified that he had no recollection of having received the letter, or of having ever seen it. No action was taken upon it in reference to the insurance to which it related. In October, 1890, Boulden approached Adams & Co.—A. A. & G. G. Adams—with a view of obtaining insurance on the building described in the policies sued on in these cases. He desired $15,000 of insurance, and that sum was agreed on as the maximum of concurrent insurance to be allowed or taken. The two insurance companies, appellants in this appeal, were represented by Adams & Co. as local agents at Birmingham, and each of them issued policies of insurance on the building, aggregating $4,500. No other or further insurance was then placed in any company of which Adams & Co. were the accredited local agents. This left $10,500 to be placed in other companies. To meet this want, Boulden requested Adams & Co. to represent and act for him, and to place the remaining $10,500 of concurrent insurance with other companies. This they proceeded to do, placing none of it with companies of which they were agents. They reported to Boulden that they had secured the amount of insurance requested, and he thereupon paid them the amount of premiums on the entire fifteen thousand dollars of insurance.

The stipulation in the policies that they shall be void, "if the interest of the insured be other than unconditional and sole ownership; or, if the subject of the insurance be a building on ground not owned by the insured in fee simple," will be remembered. The imperfect character of Boulden's title will also be remembered. Not to refer to other stipulations on his part, of the performance or non-performance of which the record is silent, he had paid only one-third of the purchase-money, and held only a bond or obligation to make him title, on full and complete payment.

The court, in one paragraph of the charge, instructed the jury "that if they believed from the evidence that the plaintiff, when applying for and procuring the policies in suit,

informed Adams & Co. that he had only a bond for title to the property to be insured, that was sufficient to charge them with notice of the true state of plaintiff's title, and notice to them, acquired in that way, was notice to the defendants; and if the policies were issued with such notice so acquired, the defendants can not defend on the ground that plaintiff did not have the kind of title mentioned in the policy." This charge was excepted to.

The entire testimony on which this charge was based was, first, the letter of January 30, 1889, written by Boulden to Adams, Tuttle & Co., copied above; and, second, the following oral testimony given on the trial of these cases: "The plaintiff testified in his own behalf that when applying to said Adams for the issuance of the policies sued on, which was the time they were issued, he mentioned to said Adams the subject of his title to said property, and called his attention to said letter which he had written Adams & Co., being the letter above set out, and told him the title to his property was the same then as stated in said letter. He further testified that he wrote only that one letter to Adams & Co. from Kentucky; and when he returned, about a week after he wrote said letter, he saw said A. A. Adams, and asked him why he did not answer it, and he replied that he did not think it was necessary. There was conflict in the evidence as to said conversations with A. A. Adams, testified to by plaintiff; defendant's evidence tending to show no such conversation occurred." There was no other testimony on this question.

It is clearly settled law that if a policy of insurance on a building be obtained on a representation and stipulation that the applicant has the entire ownership of the land on which the building stands, when in fact he owns only a fractional or qualified interest, this will avoid the policy.—*Western Assurance Co. v. Stoddard*, 88 Ala. 606; *Columbia Ins Co. v. Lawrence*, 2 Pet. 25, 49–50; s. c., 10 Pet, 507; May on Insurance, § 181, *et seq.*: 7 Amer & Eng. Encyc. of Law, 1020; 11 *Ib.* 303; 4 Wait's Ac. & Def. 53; *New Castle Fire Ins. Co. v. Macmorran*, 1 Fire Ins. Cases. 95.

It is equally well settled that if in negotiating for the policy the insurance company, or its authorized agent, is informed of the extent of interest owned by the applicant for insurance, this meets substantially the requirements of the stipulation, and saves the insurance. In *Capital City Ins. Co. v. Caldwell*, 95 Ala. 77, we first approved a Mississippi ruling—*Insurance Co. v. Bowdre*, 67 Miss. 620; 7 So. Rep. 596, and then added: "The true ground of the de-

cision is expressed in the declaration by the court that 'it [the assertion that the assured had a fee simple title] can only mean that the assured did not have a limited interest in the property.' . . The extent of ownership held by the assured in the building was the material inquiry, because such interest stimulates solicitude and watchfulness in its preservation. The interest, not the evidence of it, is the stimulus." See also *Phœnix Fire Ins. Co. v. Copeland*, 86 Ala. 551; s. c., 90 Ala. 386; *Com. Fire Ins. v. Allen*, 80 Ala. 571.

Did the letter notify Adams & Co. of the extent of Boulden's ownership in the lots, so as to save the forfeiture? The information it contained was that he had only a bond for title, and did not have a deed. The stipulation in the policies was and is that they were to be void, "if the interest of the insured be other than unconditional and sole ownership," or, if the building be "on ground not owned by the insured in fee simple." The letter certainly informed the agents that Boulden did not have a fee simple title. Did it give information that he did not hold unconditional and sole ownership? We think not. It made no mention of the unpaid purchase-money—$1,000 with interest—for which the vendor held a lien on the lots. Nor was it implied, in anything said, that any part of the purchase-money was unpaid. He had accepted a policy with the stipulation that it should be void if he were not the unconditional and sole owner of the lot, and, to avoid its effect and escape forfeiture, he must have informed the insurance company, or its authorized agents, how far his claim or title fell below unconditional ownership. This he entirely failed to do; and hence failed to exculpate himself from the false stipulation, or to relieve himself of its effect. The Circuit Court erred in the charge copied above.

Other lines of defense were relied on, and other questions discussed, but we will reserve what we have to say upon them till we come to consider other cases, in which Boulden sued other insurance companies which had issued policies on the same building. Those questions pertain more naturally to those other cases.

Reversed and remanded.

WALKER, J., not sitting.