[No. 5549.  Decided September 15, 1905.]

LORENZ NEHER, *Respondent,* v. WESTERN ASSURANCE COMPANY, *Appellant.*[1]

INSURANCE—CONDITIONS AS TO INCUMBRANCE—VIOLATION—EFFECT— ORAL APPLICATION—REPRESENTATIONS.  A policy of fire insurance upon personal property subject to chattel mortgages duly recorded, is not avoided by a condition that the same shall be void if the property is incumbered by chattel mortgage, where the policy was written upon an oral application and no representations were made as to the condition of the property, and the insured did not know that the policy afterwards sent to him contained the condition in question (ROOT and CROW, JJ., dissenting).

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered September 12, 1904, upon findings in favor of the plaintiff after a trial before the court without a jury upon stipulated facts, in an action on a policy of insurance.  Affirmed.

*H. T. Granger,* for appellant.

*Dorr & Hadley,* for respondent.

1Reported in 82 Pac. 166.

Fullerton, J.—Respondent, being the owner and in possession of certain personal property covered by two certain chattel mortgages, aggregating $1,600, each of which were properly recorded, applied to appellant's agent for insurance upon the property against loss by fire. The agent acting in behalf of the appellant agreed to insure the same against direct loss by fire, in a sum equal to its value, but not exceeding $1,600, for a term commencing at noon on June 23, 1903, and terminating at noon on June 23, 1904, for a consideration of $21.60. The consideration was paid, and later on a policy was sent the respondent from the appellant's office containing, among other conditions, a condition in the following words: "This entire policy . . . shall be void . . . if the subject of insurance be personal property and be or become incumbered by chattel mortgage." The property was in value greatly in excess of $1,600, and was destroyed by fire during the period covered by the contract of insurance. Payment for the loss was demanded by respondent, and refused by appellant on the ground that the contract of insurance was void by reason of the stipulation in the policy above quoted.

The application for insurance was made orally, and no representations of any kind as to the condition of the property were made by the applicant; the appellant relying for its information as to the condition of the property entirely upon the representations of its own agents. The respondent was not informed that the appellant refused to issue insurance on personal property covered by mortgage, nor did he learn, until after his property was destroyed, that the policy issued to him contained any condition to that effect. The appellant had no actual notice of the mortgages until after the destruction of the property by fire. These facts were stipulated by the parties, and the trial court decided thereon that the respondent was entitled to recover the full sum named in the contract of insurance, and entered a judgment accordingly.

The judgment was right. In *Dooly v. Hanover Fire Ins. Co.*, 16 Wash. 155, 47 Pac. 507, 58 Am. St. 26, the policy contained a condition to the effect that it should be void if the interest of the insured in the property covered by the policy be other than unconditional or sole ownership. The interest of the insured in the property was less than unconditional and sole ownership; and, on the destruction of the property by fire, the insurance company sought to avoid payment of the loss on that ground. The court held that, inasmuch as the application was an oral one, and no misrepresentations were made concerning the insured's title to the property, his right to recover was not barred by this clause of the policy. In the course of the argument the court said:

"There having been no written application in which questions were asked and answered concerning the status of the property, we think, under the authorities and as a question of right, that this condition which is injected into the policy, among numerous other conditions more or less technical and hard to understand by the ordinary mind, ought not to prevent a recovery, in the absence of any misrepresentation on the part of the insured. The insured, as a matter of fact, ordinarily knows nothing about the policy until it is made out and returned to him after the payments for the same have been made to the agent at the time the contract was made, and the insurer, having failed to obtain this information, must be held to have done so at its peril."

To the same effect are the cases of *Pioneer Sav. & Loan Co. v. Providence Wash. Ins. Co.*, 17 Wash. 175, 49 Pac. 231, 38 L. R. A. 397, and *Burrows v. McCalley,* 17 Wash. 269, 49 Pac. 508. These cases cannot be distinguished in principle from the case at bar, and authorize the judgment entered therein.

The judgment is affirmed.

MOUNT, C. J., DUNBAR, and HADLEY, JJ. concur.

Root, J. (dissenting)—I am unable to concur in the conclusion reached by the majority of the court. Respondent bases his action upon the policy which he received. He alleges said policy to be his contract with the insurance company. If it is, it necessarily follows that he is bound by its terms. Said policy either is, or is not, the contract of insurance entered into by and between appellant and respondent. If it is the contract, it is binding upon both of them. If it is not said contract, then respondent cannot maintain this action upon it. He ought not to be heard to say that it is the contract for one purpose and not the contract for another purpose. The law, ordinarily, does not permit a party to "blow both hot and cold." If appellant did not give respondent a policy in accordance with the agreement, if any, which they made for insurance, then respondent should sue on the agreement, not on this policy. However, there is no allegation of any agreement or contract for insurance except this policy.

Respondent is a business man. If a policy holder were an infant, or feeble minded person, or woman unaccustomed to business matters, there might be some excuse for not holding him or her to the terms of the contract, the policy. But why a court should put a business man of ordinary intelligence in the category of weaklings for whom the law must act as guardian, I am unable to understand. A party, legally capable of making a written contract, who becomes a party thereto, is presumed by law to know its contents. Can this court suppose that a business man of ordinary intelligence would not know that his policy contained the provisions spoken of? It was his legal duty to read his policy—to know what it contained. What are written contracts for? If a party may escape the obligations of one kind of a written contract, to which he is a party, by saying he never read it and didn't know its contents, why may he not likewise escape the binding force of any written contract? Let it be remembered that this is not a case of "overreaching." No fraud, deception or sharp practices are alleged. The policy

is in the usual form. It was delivered to respondent. He had it in his possession from date of issue until the fire, about two weeks. It was the only contract of insurance existing between them. If respondent did not read it, appellant is certainly not to blame for such neglect. Respondent gets the policy and, by keeping it without any protest, justifies appellant in supposing that it was satisfactory. It seems to me that his conduct constituted a legal acceptance of the policy. Were it a written contract with anybody other than an insurance (or kindred) company, how would respondent's attempt to avoid its terms be regarded? There being an absence of fraud, deception, misrepresentation, and "overreaching," it is not apparent why this case should not be controlled by principles applicable to written contracts.

This court has frequently held, even in cases of actual misrepresentation, that a party defrauded would not be given relief where he might have protected himself by the use of his natural faculties. *Hulet v. Achey,* 39 Wash. 91, 80 Pac. 1105; *Washington Cent. Imp. Co. v. Newlands,* 11 Wash. 212, 39 Pac. 366; *Walsh v. Bushell,* 26 Wash. 576, 67 Pac. 216; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613; *Sherman v. Sweeny,* 29 Wash. 321, 69 Pac. 1117. In *Washington Cent. Imp. Co. v. Newlands, supra,* this court, among other things, said:

"If people having eyes refuse to open them and look, and having understanding refuse to exercise it, they must not complain, when they accept and act upon the representations of other people, if their venture does not prove successful. Written contracts would become too unstable if courts were to annul them on representations of this kind."

This extract was quoted with approval in three of the other cases just cited. I think it still good law. But I see no way of reconciling the doctrine of those cases with that announced in the majority opinion herein. Here, a mere reading of the policy would have informed respondent all about its terms,

11—40 WASH.

and nobody prevented him from reading it.   It was simply neglect on his part.   To allow him to recover is, in my opinion, to recognize a proposition at variance with well established principles of law.

CROW, J. (dissenting)—I concur in the foregoing dissent on the grounds therein stated, and on the further ground that respondent did not have an insurable interest in the property destroyed, to the full amount of his policy.   It is a well established rule of insurance law in this country that the insured must have an insurable interest in the property sought to be protected by his policy, and this interest should certainly equal the face value of such policy.   16 Am. & Eng. Ency. Law (2d ed.), 845, 846.

In this case, the loss, which was a total one, amounted on respondent's own estimate to only $2,504.00, while the chattel mortgage of which the company was not advised amounted to $1,600 and interest.   This left respondent, at the outside, an insurable interest of only $904, whereas the policy was written for $1,600.   Were any fraud whatever to be presumed, it must have been on the part of respondent, in placing a policy of $1,600 on property in which he knew he had an equity of only $904.   To permit any recovery whatever under such circumstances, to say nothing of a recovery of the full face of the policy had here, is to place a premium upon fraud on the part of an assured, instead of preventing any unfair advantage being taken of him by the company, as seems to have been implied in the majority opinion.