PARSONS, RICH & COMPANY v. FREEMAN P. LANE and Another.[1]

January 12, 1906.

Nos. 14,646—(99).

**Fire Insurance—Title to Land.**

A fire insurance policy for $1,000 issued June 21, 1903, for a gross premium, was apportioned upon a building, stock, office supplies, etc. Neither written application nor oral representation was made by the applicant, and no inquiries were made by the company. The policy, as delivered and retained, provided: "This entire policy * * * shall be void * * * if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple." The building stood on leased ground. A fire occurred August 21, 1903, and the loss was apportioned upon the building, stock, machinery, boiler, and engine house. The company first learned that the building stood on leased ground on September

[1]Reported in 106 N. W. 485.

16, 1903, and never offered or refused to return the premium which had been paid. The company became insolvent, and, in an action against the receivers the trial court denied the plaintiff any relief, but directed the receivers to return the premium. *Held*:

1. That the provision with reference to ownership and title applied to the existing conditions, and not to future changes in title.

2. It was incumbent upon the applicant to disclose the nature of his title.

3. The insured, by accepting the policy in question, is charged with notice of its contents, and is bound by its conditions. McFarland v. St. Paul F. & M. Ins. Co., 46 Minn. 519, 49 N. W. 253.

4. The company, by issuing the policy without inquiry, did not waive the conditions as to title and ownership. Collins v. St. Paul F. & M. Ins. Co., 44 Minn. 440, 46 N. W. 906.

5. An insurance company cannot take advantage of a condition in its policy to avoid payment of a loss, when the facts which by its terms invalidate the policy were known to it or its agent when it issued the policy. But this rule has no application when the facts were not known. What is not known cannot be waived.

6. When a policy of insurance never attaches, and no risk is assumed, the insured may recover back the premiums, unless he has been guilty of fraud, or the contract is illegal and he is in pari delicto. But the insurer is not obliged to return, or offer to return, the premiums which have been paid voluntarily before notice of the fact that the policy is not in force, as a condition precedent to availing itself of its defense to an action on the policy.

7. The contract is entire, and the increase of moral hazard, caused by the condition of the title to the land upon which the building stood, affected the entire property which was destroyed.

Appeal by claimant, Parsons, Rich & Co., from an order of the district court for Hennepin county, Simpson, J., confirming the action of defendants as receivers of Millers & Manufacturers Insurance Co., insolvent, in disallowing its claim against the insolvent company upon a policy of fire insurance. Affirmed.

*W. A. Kerr* and *Brown & Kerr,* for appellant.

*H. V. Mercer,* for respondents.

ELLIOTT, J.

This is an appeal from an order of the district court approving and confirming the action of the receivers of the Millers & Manufacturers

Insurance Company in disallowing the claim of Parsons, Rich & Co. against the insolvent corporation. The facts upon which the claim against the company arose are practically agreed upon by the parties. The policy was issued June 21, 1903, and by its terms insured the firm of Parsons, Rich & Co. against loss or damage by fire upon the property described therein in the sum of $1,000 from the date thereof until May 20, 1904. On February 20, 1904, the insurance company became insolvent, and Freeman P. Lane and Hugh V. Mercer were appointed receivers. A fire occurred on August 21, 1903, and the property covered by the policy was partially destroyed. A claim was duly made and filed with and disallowed by the receivers. It is conceded that if there is any liability on the part of the company or the receivers it is for the sum of $830.

The policy in question covered a brick and frame building and additions thereto, located upon certain lots in Newton, Iowa, and used by the insured in connection with its manufacturing business. It also covered the stock and machinery described in detail in the policy. The policy contained the following provisions:

> This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss. This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership or if the subject of insurance be a building on ground not owned by the insured in fee simple. * * * This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be indorsed hereon, or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or

added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.

No written application was made for the insurance, and no written or oral representations of any kind or character were made by the applicant. When the policy was issued, and until the time of the trial, the title to the lots upon which the insured building was situated was not in Parsons, Rich & Co., but was in George W. Parsons. This fact was not known to the insurance company or to any of its agents or representatives until after the loss. The fire occurred August 21, 1903, and it appears from a letter written by the adjuster of the company that the actual condition of the title was known to the company on September 16, 1903. The company and the receivers refused to pay the loss, but never returned, or offered to return, or expressed a willingness to return or account for, the amount of the premiums which had been paid by the claimant. On appeal to the district court the action of the receivers was approved and confirmed, but the court directed that the receivers return to the claimant the amount which the company had received as premium under the contract.

The appellant contends: (1) That, in the absence of any inquiry or application or representation, the condition in the policy as to title and ownership did not apply to the then existing condition of the title, but referred only to subsequent changes in the title. (2) That under the circumstances the insurer should be held to have known of the actual condition of the title, and to have waived the provisions in the policy with reference to sole title and ownership at the time of the issuance of the policy. (3) That the policy was at the most only voidable at the option of the insurer, and if it elected to declare it void the declaration must relate back to the inception of the contract and be accompanied by a return or tender of the premium which had been received; that by failing to promptly tender back the premium upon learning the condition of the title the insurance company waived its right to insist

upon the condition. (4) That the condition is ambiguous and not applicable to a policy which covers both stock and buildings.

1. The policy provides that

> This entire policy * * * shall be void * * * if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple.

There are some authorities which hold that this provision refers only to subsequent changes in the title, but they rest upon an unnatural construction of the language of the policy. The words used refer to the present and not to the future, and the conditions relate to facts as they exist at the date of the policy. Rosenstock v. Mississippi, 82 Miss. 674, 678, 35 South. 309; Liverpool v. Cochran, 77 Miss. 348, 26 South. 932, 78 Am. St. Rep. 524; Manhattan v. Weill, 28 Gratt. 389, 26 Am. Rep. 364; Collins v. London, 165 Pa. St. 298, 30 Atl. 924.

The entire policy is not set out in the record, but we presume that it contains the usual provisions with reference to the effect of alienation and change of title. The contract was made in Iowa, and the form commonly in use in that state provides that it "shall be void if any change or diminution other than by the death of the insured take place in the interest, title, or possession of the subject of the insurance." The legal effect of future changes in the title is provided for by this provision, and the provisions relating to title and ownership refer to conditions at the time of the inception of the contract. It will be noted that in Hoose v. Prescott, 84 Mich. 309, 47 N. W. 587, 11 L. R. A. 340, cited by appellant, the condition was that the policy should be void "if any change takes place in the title," etc. The court held that the language of the policy itself referred the condition to matters arising after the insurance went into effect.

2. The form of policy now in common use requires the insured to disclose the extent and nature of his interest in the property, as it is a matter which largely influences underwriters in taking or rejecting risks and estimating and figuring premiums. There is no doubt but what a provision to the effect that the policy shall be void if the insured is not the sole and unconditional owner of the property is reasonable

and will be given full force and effect, unless it is waived by some act on the part of the insurer. Phœnix v. Public Parks, 63 Ark. 187, 37 S. W. 959; East Texas v. Brown, 82 Tex. 631, 18 S. W. 713; Dow v. National, 26 R. I. 379, 58 Atl. 999, 67 L. R. A. 479. But it is contended that, where the policy is issued by an insurance company without a written application, the company must be held to have waived the condition of the policy as to title and ownership. This does not appear to be an open question in this jurisdiction, as we have in two instances held contrary to the appellant's contention.

In McFarland v. St. Paul F. & M. Ins. Co., 46 Minn. 519, 49 N. W. 253, the policy was issued without a written application, and without inquiry by the agent of the insurance company or representations by the insured. It contained a provision to the effect that, if the insured should keep or use gasoline upon the premises without the written permission of the insurer, the policy should be void. It was contended that, when an insurance company issues a fire policy without inquiry or without application or representations, it waives knowledge as to any existing use of the property which it could have ascertained by reasonable investigation although by the terms of the policy such a use is expressly prohibited, and there is nothing about the description of the property which necessarily implies or indicates that it may be used in a prohibited way. But the court said: "The defendant insured the plaintiff's dwelling house upon an express condition that the use of gasoline should terminate the contract. * * * The general rule is well stated to be that where there is no application the insured is bound by the conditions found in the policy, which he has accepted and retained without objection. Swan v. Watertown Ins. Co., 96 Pa. St. 37; May, Ins. § 167. Exceptions may be found to this rule, but there are none which can be of service to appellant; for the policy alone, unmodified by representations or in any other manner, was the contract existing between the parties. The conclusive effect of a condition in an insurance policy under like circumstances was in fact determined in the recently decided case of Collins v. St. Paul F. & M. Ins. Co., 44 Minn. 440, 46 N. W. 906."

In the case cited, the policy contained a condition precisely like that in the one now under consideration. The action was brought to re-

form the policy. "Even if so reformed," said Chief Justice Gilfillan, "no recovery could be had, for the policy provides that the company shall not be liable 'if the interest of the assured in the property is not one of absolute and sole ownership'; and it appeared beyond controversy that the plaintiff had only a life estate in the property. Of course she had an insurable interest, but that interest was not insured. The policy expressly excluded from its operation any interest other than the absolute and sole ownership." In the McFarland case attention was called to the fact that there was no attempt on the trial of the Collins case to show that the plaintiff's application for insurance contained any questions or answers in respect to the title. The right to the recovery was successfully resisted by the insurance company solely on the conditions of the policy.

It is claimed that the company waived the right to insist upon the breach of condition by issuing the policy without making full inquiries as to the true facts. We are unable to see any grounds for either a waiver or an estoppel in the facts disclosed by this record. A waiver means the intentional relinquishment of a known right. Dawson v. Shillock, 29 Minn. 189, 191, 12 N. W. 526; Fraser v. Ætna, 114 Wis. 510, 523, 90 N. W. 476. As said in Stackhouse v. Barnston, 10 Ves. Jr. 453, a mere waiver signifies nothing more that an expression of an intention not to insist upon a known right. In Warren v. Crane, 50 Mich. 300, 15 N. W. 465, it was said that waiver is a voluntary act, and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on. Both intent and knowledge, actual or constructive, of the facts, are therefore essential elements. Schreiber v. German-American Ins. Co., 43 Minn. 367, 45 N. W. 708; Pence v. Langdon, 99 U. S. 578. The intent may be inferred from facts and circumstances, as well as found in declarations of the parties, and the knowledge may also be either actual or constructive. Fraser v. Ætna, supra. But, as said in St. Paul F. & M. Ins. Co. v. Parsons, 47 Minn. 352, 50 N. W. 240: "Nor, in general, where the facts do not constitute an estoppel, should one who neither knows the fact of the forfeiture nor is chargeable with fault in not knowing it be held to have waived the same by acts or conduct not intended to have such an effect."

There are many cases relating to insurance in which waiver has been either intentionally or through a failure to distinguish between two entirely different things, confused or identified with estoppel. Indeed, some writers seem to imply that the words "waiver" and "estoppel" lose their legal meaning as soon as they are invoked in cases between the parties to a contract of insurance. Justice Field in Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387, said: "The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions." See, also, May, Ins. §§ 469, 507. Waiver and estoppel are treated as the same thing in Union v. Manhattan, 52 La. An. 36, 26 South. 800. In Grabbs v. Farmers, 125 N. C. 389, 34 S. E. 503, it was said that an implied waiver is in the nature of an estoppel in pais. In Northern Assur. Co. v. Grand View Bldg. Assn., 183 U. S. 308, 339, 22 Sup. Ct. 133, 144, 46 L. Ed. 213, the court quoted the following language of Justice Sharswood from Elliott v. Lycoming, 66 Pa. St. 22, 5 Am. Rep. 323: "Undoubtedly, if the company, after notice or knowledge of the over insurance, treated the contract as subsisting by making and collecting assessments under it from the insured, they could not afterwards set up its forfeiture. It would be an estoppel, which is the true ground upon which the doctrine of waiver in such cases rests." In Rice v. Fidelity & Deposit Co., 103 Fed. 427, 43 C. C. A. 270, 278, Judge Sanborn said: "But a waiver is either the result of an intentional relinquishment of a known right or an estoppel from enforcing it. To constitute a waiver there must be an intention to relinquish the right, or there must be words or acts calculated to induce the other contracting party to believe, and which deceive him into the belief, that the holder of the right has abandoned it; and the party deceived must have acted on his belief, so that an assertion of the right will inflict upon him a loss he would not have sustained if its holder had not appeared to relinquish it."

In some cases it is said that while a waiver of forfeiture need not be based on a technical estoppel, yet in the absence of an express waiver some of the elements of estoppel must exist. Armstrong v. Agricultural, 130 N. Y. 560, 565, 29 N. E. 991; Ronald v. Mutual, 132 N. Y. 378, 30 N. E. 739; Germania v. Pitcher, 160 Ind. 392, 64 N. E. 922; Gibson v. Liverpool, 159 N. Y. 418, 54 N. E. 23. Again, it has been said that a waiver must be supported by an agreement founded on valuable consideration, or the act relied upon must be such as to estop a party from insisting upon the performance of a contract or forfeiture of the condition. Ripley v. Ætna, 30 N. Y. 136, 86 Am. Dec. 362; New York v. Watson, 23 Mich. 486; McFarland v. Peabody, 6 W. Va. 430; Merchants v. Lacroix, 45 Tex. 158, 168; Northwestern v. Amerman, 119 Ill. 329, 10 N. E. 225, 59 Am. Rep. 799.

This court has always recognized the distinction between waiver and estoppel, and holds that a waiver need not be based either upon a new agreement or an estoppel. Thus in Mee v. Bankers' Life Assn., 69 Minn. 210, 72 N. W. 74, it was said: "The law seems to be well settled, and has frequently been acted upon, that if, in negotiations or transactions with the assured after knowledge of the forfeiture, the insurer recognizes the continued validity of the policy or does acts based thereon, the forfeiture is, as a matter of law, waived, and such a waiver need not be based on any new agreement or an estoppel." Justice Collins also quotes with approval the following language from Queen v. Young, 86 Ala. 424, 5 South. 116, 11 Am. St. Rep. 51: "Though the waiver may be in the nature of an estoppel and maintained on similar principles, they are not convertible terms. The courts, not favoring forfeitures, are usually inclined to take hold of any circumstances which indicate an election to waive a forfeiture. A waiver may be created by acts, conduct, or declarations insufficient to create a technical estoppel."

In the present case it is not claimed that there is any evidence even tending to show that any agent or officer of the insurance company had any information as to the condition of the title to the real estate before the policy was issued. We are asked to presume that the insurer, by issuing the policy without investigation on its part, intended to waive facts and conditions of which it had neither actual nor constructive

notice. The great weight of authority supports the rule that an insur-ance company will not be permitted to take advantage of a condition contained in a policy to avoid payment of a loss, when the facts render-ing the policy void by its terms were known to the insurer directly or through its agent at the time it issued the policy and accepted the pre-mium. This doctrine rests upon the ground that facts made known to an agent of the company, when acting as such, are in law known to the principal, and that a fraud would be perpetrated if an insurance com-pany, through its agent, was allowed to deliver its policy and accept the premium with knowledge of facts which under its provisions ren-dered it void, ab initio, and thereafter assert its invalidity. Brandup v. St. Paul F. &. M. Ins. Co., 27 Minn. 393, 7 N. W. 735; Wilson v. Minnesota F. M. F. Ins. Co., 36 Minn. 112, 30 N. W. 401, 1 Am. St. Rep. 659; First Nat. Bank v. American Cent. Ins. Co., 58 Minn. 492, 60 N. W. 345; Anderson v. Manchester F. Assur. Co., 59 Minn. 182, 195, 60 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609, 50 Am. St. Rep. 400; Otte v. Hartford Life Ins. Co., 88 Minn. 423, 93 N. W. 608, 97 Am. St. Rep. 532; Andrus v. Maryland Casualty Co., 91 Minn. 358, 98 N. W. 200; Hartley v. Pennsylvania F. Ins. Co., 91 Minn. 382, 98 N. W. 198, 103 Am. St. Rep. 512; Insurance Co. v. Brodie, 52 Ark. 11, 11 S. W. 1016, 4 L. R. A. 458; Forward v. Continental, 142 N. Y. 382, 37 N. E. 615, 25 L. R. A. 637; Hamilton v. Dwelling House, 98 Mich. 535, 57 N. W. 735, 22 L. R. A. 527; Michigan v. State, 94 Mich. 389, 53 N. W. 945, 22 L. R. A. 319; Dailey v. Preferred, 102 Mich. 289, 57 N. W. 184, 26 L. R. A. 171; Reed v. Equitable, 17 R. I. 785, 24 Atl. 833, 18 L. R. A. 496; Home v. Mendenhall, 164 Ill. 458, 45 N. E. 1078, 36 L. R. A. 374; Virginia v. Cummings (Tex. Civ. App.) 78 S. W. 716; Mesterman v. Home, 5 Wash. 524, 32 Pac. 458, 34 Am. St. Rep. 877; Independent v. Fidelity, 113 Iowa, 65, 84 N. W. 956; Fireman's Fund Ins. Co. v. Norwood, 69 Fed. 71, 16 C. C. A. 136; Northern Assur. Co. v. Grand View Bldg. Assn., 101 Fed. 77, 41 C. C. A. 207 (reversed in 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, on the ground that the waiver could only be effected in writing as provided for in the policy); Hartford v. Haas, 87 Ky. 531, 9 S. W. 720, 2 L. R. A. 64; Hartford v. Redding (Fla.) 37 South. 62, 67 L. R. A. 518, 4 Cur-rent Law, 202.

In all these cases there was evidence tending to show that the insurance company or its agent had knowledge of the facts and conditions before and at the time the policy was issued. The rule meets with our entire approval. But in the present case neither the company nor its agent had knowledge of the conditions, nor are there any facts upon which to base a waiver, unless they are to be presumed from the mere fact that the policy was issued. We are aware that there are cases decided by courts of high standing to the effect that this alone is sufficient to justify the inference that the insurer acted on its own knowledge and issued the policy with all the information it considered important for it to acquire. A strong statement of this view is found in Manchester Fire Assur. Co. v. Abrams, 89 Fed. 932, 32 C. C. A. 426, where it is said: "Where the insured has an insurable interest in the property, and in good faith applies for insurance upon the same, and makes no actual misrepresentation or concealment of his interest therein, and the insurance company refrains from making inquiry concerning his interest, and issues a policy to him, and accepts and retains his premium, the company must be presumed to have knowledge of the condition of his title and to assure the property with such knowledge." So, in Philadelphia v. British, 132 Pa. St. 236, 19 Atl. 77, 19 Am. St. Rep. 596, it was said that: "We ought to assume that a policy written under such circumstances was written upon the knowledge of the representative of the insurer, and was intended to cover in good faith the interest which the insured had in the buildings."

This general proposition is supported to a greater or less extent by the decision or by general language used in Hoose v. Prescott, 84 Mich. 309, 47 N. W. 587, 11 L. R. A. 346; Hall v. Niagara, 93 Mich. 184, 53 N. W. 727, 18 L. R. A. 135, 32 Am. St. Rep. 497; Miotke v Milwaukee, 113 Mich. 166, 71 N. W. 463; Dooly v. Hanover, 16 Wash. 155, 47 Pac. 507, 58 Am. St. Rep. 26; Union v. Nalls, 101 Va. 613, 44 S. E. 896, 99 Am. St. Rep. 926; Morotock v. Rodefer, 92 Va. 747, 24 S. E. 393, 53 Am. St. Rep. 846; Manhattan v. Weill, 28 Gratt. 389, 26 Am. Rep. 364; Morrison v. Tennessee, 18 Mo. 262, 59 Am. Dec. 299; Hanover v. Bohn, 48 Neb. 743, 67 N. W. 774, 58 Am. St. Rep. 719; German v. Kline, 44 Neb. 395, 62 N. W. 857; Phenix v. Fuller, 53 Neb. 811, 74 N. W. 269, 40 L. R. A. 408, 68 Am. St. Rep. 639; Farm-

ers v. Mickel (Neb.) 100 N. W. 130; Wright v. Fire Ins. Co., 12 Mont. 474, 31 Pac. 87, 19 L. R. A. 211; Sharp v. Scottish, 136 Cal. 542, 69 Pac. 253, 615; Lancaster v. Monroe, 101 Ky. 12, 39 S. W. 434, 19 Ky. Law Rep. 204; German v. Niewedde, 11 Ind. App. 624, 39 N. E. 534; Glens Falls v. Michael (Ind.) 74 N. E. 964; Allesina v. London, 45 Ore. 441, 78 Pac. 392; Pelzer v. Sun, 36 S. C. 213, 15 S. E. 562; Arthur v. Palatine, 35 Ore. 27, 57 Pac. 62, 76 Am. St. Rep. 450; Com. v. Hide, 112 Mass. 136, 17 Am. Rep. 72; Georgia v. Holmes, 75 Miss. 390, 23 South. 183, 65 Am. St. Rep. 611; Peet v. Dakota, 1 S. Dak. 462, 47 N. W. 532; German v. Davis, 6 Kan. App. 268, 51 Pac. 60; New Jersey v. Commercial, 64 N. J. L. 580, 46 Atl. 777, 779. See 3 Cooley, Ins. Briefs, 2630; Hanover v. Bohn, 48 Neb. 743, 67 N. W. 774, 58 Am. St. Rep. 719; German v. Kline, 44 Neb. 395, 62 N. W. 857; Wright v. Fire Ins. Co., 12 Mont. 474, 31 Pac. 87, 19 L. R. A. 211; Dooly v. Hanover, supra; Neher v. Western, 40 Wash. 157, 82 Pac. 166 (two judges dissenting); Manchester Fire Assur. Co. v. Abrams, supra; Sharp v. Scottish, 136 Cal. 542, 69 Pac. 253, 615; and Glens Falls v. Michael, supra, supporting the appellant's contention.

A careful examination of many of these cases will show that they are not in point. In some of them it appears that the company, through its agent, had actual knowledge of the condition of the title before the policy was issued, and this, of course, distinguishes them from the present case. Others rest upon the general doctrine of concealment, which has no application when the defense rests upon a breach of a condition precedent contained in the policy. In Glens Falls v. Michael, supra, there is a strong dissenting opinion by Justice Gillett, and in Sharp v. Scottish, supra, Beatty, C. J., filed a dissenting opinion in which he said: "The doctrine quoted was applied in cases where it was affirmatively proved and expressly found that the material fact was known to the insurer. Here it is extended to a case in which the insurer knew nothing of such fact, upon the ground, apparently, that he should have made inquiry as to the truth of the claim implied in the request of McBride that the company would insure his house. This is a wholly unwarranted extension of a doctrine sufficiently liberal as heretofore applied, and is against the decided weight of authority."

The Michigan court approves the doctrine in general language, but

it will be noted that in Hoose v. Prescott, supra, the agent had full and actual knowledge of the fact that the building insured stood on leased ground. In Hall v. Niagara, supra, there was a waiver of the condition as to the title by consent of the agent subsequently given to a transfer of the policy to a person who had acquired the fee simple title. In Miotke v. Milwaukee, supra, the insured was an ignorant foreigner who had not sufficient knowledge of the English language to enable him to fill out the blank in the application. The solicitor for the insurance company left the answer to the question blank and informed his superior, the agent of the company, of the fact, before the policy issued, and was told that he would "fix it up." The solicitor, who was the agent of the company, had full information as to the condition of the plaintiff's title, and it was very properly held that to permit the company to assert the forfeiture under such circumstances would be a fraud upon the insured. There were ample facts upon which to base an estoppel.

In Morotock v. Rodefer, supra, it was held that the condition relating to the sole and unconditional ownership of the property was not broken by the fact that there was a mortgage on the property at the time the policy was issued. Such condition was said to refer, not to the legal title, but to the interest of the insured in the property. In Manhattan v. Weill, supra, the agent of the insurance company knew that the property stood upon leased ground. Philadelphia v. British, supra, in general language supports the theory contended for by the appellant. In Western v. Home, 145 Pa. St. 346, 22 Atl. 665, 29 Am. St. Rep. 703, the court said: "It is not even pretended that there was any fraudulent concealment of ownership of the property, or that any untruthful representation was made upon the faith of which the policy was issued; nor is it claimed that the defendant company was not fully aware of the exact situation and ownership of the oil when it accepted the risk." In Lycoming v. Jackson, 83 Ill. 302, 25 Am. Rep. 386, the insured stated the fact that the property stood on leased ground to the agent of the insurance company, but neglected to make it appear in the policy, and, as said by the court, "it would be monstrous to hold that the company might make such an omission, whatever the purpose, deliver it to an illiterate and ignorant person who relied upon the fair-

ness and integrity of the agents of the company, to defeat the assured because they failed in good faith to insert information fairly given." Morrison v. Tennessee, 18 Mo. 262, merely states the general rule that a failure to disclose matters with reference to which no inquiries are made, when not fraudulent, is not in itself fraudulent concealment which will invalidate a policy. In Quarrier v. Peabody, 10 W. Va. 507, 27 Am. Rep. 582, it was held that the existence of a deed of trust did not violate the condition as to sole and unconditional ownership. The insured simply said that the property was his, and the mere fact that there was a lien upon it did not prevent it from being his or rendering the statements untrue. In Georgia v. Holmes, supra, it appeared that the appellant asked the agent of the company to furnish an application, and to inspect the property. The agent did not comply with these requests, but answered that he knew the property. Woods, C. J., said: "This is a case, then, in which no application—no formal application— was made, because the agent held it unnecessary, inasmuch as he knew about the condition of the property; and a case in which appellee did not know there was any anti-mortgage clause contained in the policy until after the loss; and the question is whether the company shall now be permitted to repudiate its contract made, not upon any misrepresentations, or even representations of the insured, but upon its own knowledge of the condition of the property." Vankirk v. Citizens, 79 Wis. 627, 48 N. W. 798, applies the general doctrine of concealment. German v. Niewedde, 11 Ind. App. 624, 39 N. E. 534, was apparently overruled by Sisk v. Citizens, 16 Ind. App. 565, 45 N. E. 804, which in turn was overruled by the recent case of Glens Falls v. Michael (Ind.) 74 N. E. 964, in which a divided court held that, in the absence of a written application, where no questions are asked and no statements made, it will be presumed that the insurer had knowledge of the condition of the insured's title and, by issuing the policy with knowledge thus imputed, waived the provisions requiring sole and unconditional ownership in fee simple.

Short v. Home, 90 N. Y. 16, 43 Am. Rep. 138, seems to have been largely controlled by the fact that the agent of the insurance company testified that it was his habit to make inquiries regarding the condition of the property upon which he was asked to place insurance. The

court said: "The agent of the defendant testified that, for the purpose of making out the policy when no written application is presented, he makes inquiries and memoranda of such matters as he deems important and to suit himself, and that he did so in this case. * * * It was a question of fact for the jury to determine whether the defendant's agent knew the condition of the premises, or regarded it as of any consequence whether the premises were occupied or otherwise, and made the insurance without any reference whatever to the subject of occupation." Washington v. Weymouth, 135 Mass. 503, rests upon the general doctrine of concealment. This is also true of Lancaster v. Monroe, 101 Ky. 12, 39 S. W. 434, 19 Ky. Law Rep. 204. But from the language used in this case, and in Fireman v. Meschendorf, 14 Ky. Law, 757, it is apparent that the Kentucky court accepts the doctrine contended for by the appellant.

On the other hand the rule established by this court in the Collins and McFarland cases is approved and applied in Syndicate Ins. Co. v. Bohn, 65 Fed. 165, 12 C. C. A. 531, 27 L. R. A. 614; Continental v. Cummings (Tex.) 81 S. W. 705; Georgia Home Ins. Co. v. Rosenfield, 95 Fed. 358, 37 C. C. A. 96; Rosenstock v. Mississippi, 82 Miss. 674, 35 South. 309; Orient v. Williamson, 98 Ga. 464, 25 S. E. 560; Ætna v. Holcomb, 89 Tex. 404, 34 S. W. 915; Phœnix v. Public Parks, 63 Ark. 187, 37 S. W. 959; Hebner v. Palatine, 55 Ill. App. 275; Dumas v. Northwestern, 12 App. D. C. 245, 40 L. R. A. 358; Phenix v. Searles, 100 Ga. 97, 27 S. E. 779; Barnard v. National, 27 Mo. App. 26; Mers v. Franklin, 68 Mo. 127; Fitchburg v. Amazon, 125 Mass. 431; Waller v. Northern Assur. Co. (C. C.) 10 Fed. 232; Duda v. Home, 20 Pa. Super. Ct. 244 ("The question is not whether the insured had an insurable interest, but whether he had the interest described in the policy"), distinguishing Philadelphia v. British, 132 Pa. St. 236, 19 Atl. 77, 19 Am. St. Rep. 596; Brown v. Commercial, 86 Ala. 189, 5 South. 500; Liberty v. Boulden, 96 Ala. 508, 11 South. 771; Hinman v. Hartford, 36 Wis. 159; Geiss v. Franklin, 123 Ind. 172, 24 N. E. 99, 18 Am. St. Rep. 324; Allesina v. London, 45 Ore. 441, 78 Pac. 392; Weed v. London, 116 N. Y. 106, 22 N. E. 229.

In Syndicate Ins. Co. v. Bohn, supra, the United States Circuit Court of Appeals for this circuit said: "It is contended that the contracts in

these policies, which exclude the Bohns from insurance under them upon any interest but that of unconditional ownership, are without binding force, because no inquiry respecting their title was made by the companies, and no statement concerning it was made by the Bohns, when these policies were issued. But neither inquiry nor statement before the issue of the policies was requisite to the validity of these contracts. The policies themselves containing, as they did, the contracts that they should be void if the interest of the assured had not been truly stated to the company, or if it was not truly stated in the policy, or if it was not the sole and unconditional ownership, and a description of it was not indorsed on the policy, were pointed inquiries of the assured whether their interest was the sole and unconditional ownership of the property described, and their silence and acceptance of the policies was the answer. The policies themselves were notice to the Bohns that the companies deemed their interest that of unconditional ownership, that they insured them against loss to that interest only, and that they expressly excluded every other interest from the insurance unless the Bohns immediately notified them that they held a different interest, and caused a true description of it to be written into or indorsed upon the policies. The silent acceptance of the policies by the Bohns closed these contracts, and bound them to the agreement tendered by the policies, that every interest of theirs but that of unconditional ownership was excluded from the promised indemnity. Insurance Co. v. Lawrence, 2 Pet. 25, 49, 7 L. Ed. 335; Waller v. Assurance Co. (C. C.) 10 Fed. 232; Collins v. Insurance Co., 44 Minn. 440, 46 N. W. 906; Lasher v. Insurance Co., 86 N. Y. 423, 427; Weed v. Insurance Co., 116 N. Y. 106, 113, 22 N. E. 229; Diffenbaugh v. Insurance Co., 150 Pa. St. 270, 24 Atl. 746; Fuller v. Insurance Co., 61 Iowa, 350, 16 N. W. 273; Waller v. Assurance Co., 64 Iowa, 101, 19 N. W. 865; Mers v. Insurance Co., 68 Mo. 127, 132; McFetridge v. Insurance Co., 84 Wis. 200, 54 N. W. 326; Henning v. Assurance Co., 77 Iowa, 319, 42 N. W. 308; Insurance Co. v. Boulden, 96 Ala. 508, 11 South. 771; Insurance Co. v. Smith, 92 Ala. 428, 9 South. 327."

In Orient v. Williamson, supra, Chief Justice Simmons said: "The acceptance by the insured of a policy containing the stipulation above

97 M.—8

quoted amounted to a representation on her part that she had truly stated therein her interest in the property insured, and that her interest was that of unconditional and sole ownership; and if, at that time, the title of the property was in another, to whom she had conveyed it by deed in fee simple, the representation was untrue, and according to the terms of the contract the policy was void." In answer to the claim that the condition referred to would not render the policy void unless inquiry as to the title was made of the insured, the court quoted with approval the language of Judge Sanborn in Syndicate Ins. Co. v. Bohn, supra, and said: "It is true that where an insurance company issues a policy with knowledge of the true state of the title it cannot avail itself of the defense which the company in this case was seeking to set up by the amendment to its answer; such knowledge being held to amount to a waiver.  *  *  *  But the knowledge here referred to is actual knowledge."

The language of Justice Morris in Dumas v. Northwestern, supra, may very well be referred to the case we have under consideration. The insured did not make any fraudulent concealment of the facts and the insurer asked for no information. The court said: "This is not a case of representation or misrepresentation, of failure to give information, or failure to elicit it by proper inquiry. The parties have deliberately put it into their contract, and have made it an essential condition of that contract, that the contract itself should not be binding if there was any mortgage on the property or the title was not that of unconditional ownership. There was no inhibition by law against the insertion of such a condition in the contract; and it may well be that its insertion was a matter of precaution, to guard as well against the negligence or failure of agents to elicit proper information as against the negligence or failure, not fraudulent, of persons seeking insurance to give such information. The condition is not illegal and does not contravene any rule of public policy; and even if its practical effect should be held to be to throw upon the insured party the burden of giving voluntarily the information which otherwise the insurer would have been required to elicit by proper inquiry, we know of no rule of law that would preclude parties from contracting to that effect, if they so desire."

The views expressed in these cases are in conformity with the previous decisions of this court, and we find no reasons for departing therefrom. In the case now under consideration there was no written application, no questions were asked by the agent, and no representations, other than by implication, were made by the applicant in regard to the ownership of the property or the condition of the title; and there is nothing to show that the agent had any knowledge of the actual facts. The policy in question, having been issued to Parsons, Rich & Co. without the company or its agent having any information or knowledge of the fact that the title of the lots upon which the insured building stood was not in the insured, was void ab initio by its own terms, and is unenforceable unless the insurer, after the loss, waived its right to assert the forfeiture. The difficulty with the cases which support the appellant's contention is that they raise an estoppel or imply a waiver from conditions of which the insurer had no knowledge. The waiver rests on an implication arising out of an assumption. If the insurer had knowledge actual or implied, through its agent, when the policy issued, that the existing conditions created a ground of forfeiture under the terms of the policy, a basis for waiver would have existed and the insurer could not thereafter have claimed a forfeiture. Issuing the policy with such knowledge would have been inconsistent with an honest intention to claim a forfeiture for a breach of the condition.

We are not inclined to restrict the application of the doctrine of waiver as heretofore applied by this court to the conditions contained in insurance contracts. It has been an efficient means by which to prevent insurers from treating the contract as valid when it is to their interest, and repudiating it when called upon to respond to its burdens, thus playing fast and loose with the insured. But the rule contended for seems to us to require an unreasonable extension of the doctrine. The written contract says, in language plain and unambiguous, that it shall be of no force and effect unless certain conditions then exist, and the existing facts are necessarily known to the insured. It is argued that the law must assume that all such conditions were known to the company, and, after having assumed this material and essential fact, again presume that it intended to waive any results arising therefrom to its advantage. But the insured knew the condition of his title, and,

when he received the policy, must, if he read it, have known that the insurer had entered into the contract upon the understanding that the applicant had full ownership and a fee simple title to the lots upon which the building stood. The modern fire insurance policy is practically free from the stipulations, conditions, and provisions set in infinitesimal type and hidden away in elusive locations, which served as traps for the guileless and unwary of the past generations of insured. But the most of these objectionable features have been effectually eliminated by the courts or legislatures, and there seems to be no good reason why the present insurance contracts, even while giving the insured the benefit of the doubt when ambiguous language is used, should not be treated like other written contracts between responsible parties. Kollitz v. Equitable Mut. Fire Ins. Co., 92 Minn. 234, 99 N. W. 892; Quinlan v. Providence, 133 N. Y. 356, 31 N. E. 31, 28 Am. St. Rep. 645.

Unless he has been misled by some act of the insurer, a person who accepts and retains the possession of an insurance policy is bound to know its contents. McFarland v. St. Paul F. & M. Ins. Co., 46 Minn. 519, 49 N. W. 253; Bostwick v. Mutual, 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705; Blunt v. Fidelity, 145 Cal. 268, 78 Pac. 729, 67 L. R. A. 793, 104 Am. St. Rep. 34. The reason for this rule is nowhere better stated than in Wierengo v. American, 98 Mich. 621, 57 N. W. 833. "In this case," said Justice Grant, "where there was no written application nor any terms of the policy agreed upon by parol except the amount, the insured must be charged with knowledge that the policy he receives contains the contract binding upon him as well as the insurer. He must know that the policy, which is the contract, contains the usual terms of such instruments. He may not lay it aside without reading, and, when he seeks to recover upon it and finds that under its plain provisions he cannot recover, say: 'I did not read it. The insurer did not tell me what it contained. I did not know it was necessary to tell him about the title and condition of my property and therefore I am not bound by its terms.' * * * Certainly the insured must be held to some degree of diligence in obtaining knowledge of the contracts to which they are parties. Ignorance will not relieve a party from his contract obligations. The law only relieves him there-

from in cases of fraud, mistake, waiver, or estoppel. An insurer is not required by the law to inquire into the condition of the title to the property insured, or to inform the insured of all the conditions and terms of the policy to be issued, or to read it to him, or inform him of its contents. When received and accepted without objection, he must be held bound by its terms, unless these terms are waived by the insurer. This is the law of contracts, and there is no reason or authority for holding that an insurance contract is an exception thereto. A deed is the contract between the grantor and the grantee, although the grantee does not sign it. Its terms and conditions are binding upon the grantee, and he cannot avoid them, except for one of the reasons above stated. If he accepts a deed without reading it, and there is no fraud on the part of the grantor or mutual mistake as to its terms, he is bound by it. If a mortgagee accepts a mortgage without a covenant against prior incumbrances, or if it contains an express provision that it is subject to prior incumbrances, it is binding upon him, unless the covenant against incumbrances was omitted by fraud or mistake. The same rule applies to insurance contracts."

3. The fact that the building in question stood upon leased ground was not known to the insurance company until after the loss. The fire occurred on August 21, 1903, and it appears that the adjuster of the company knew of the condition of the title at least as early as September 16, following. The action to recover on the policy was commenced a year later, and as far as the evidence shows the company never returned, offered to return, or refused to return the premium it had received. The trial court held that the contract of insurance was void, and that the plaintiffs were not entitled to recover the amount of the loss, but directed that the receivers of the company return to the plaintiffs the entire amount which they had paid as premium. It is claimed that the defendant waived the right to avail itself of its defense because of its failure to return the premium within a reasonable time after it learned that the policy was not in force. We think this contention rests upon a misconception of the duty of the insurer and of the application of the doctrine of waiver and estoppel. Georgia Home Ins. Co. v. Rosenfield, 95 Fed. 358, 37 C. C. A. 96. The most that can properly be claimed is that the retention of the premium is evidence of an

intention not to claim that the policy is invalid. As said in Fraser v. Ætna, 114 Wis. 510, 90 N. W. 476, the mere retention of the money does not under all circumstances indicate an intention to waive the forfeiture. See also Lewis v. Phœnix, 44 Conn. 72. This intention to recognize the contract conclusively appears when the insurer asserts a claim to premiums after it has learned of the breach of condition, or after it has acquired such knowledge retains money which it has forced the insured to deliver to it. Schreiber v. German-American Hail Ins. Co., 43 Minn. 367, 45 N. W. 708; First Nat. Bank v. Manchester Fire Assur. Co., 64 Minn. 96, 66 N. W. 136; Stylow v. Wisconsin, 69 Wis. 224, 34 N. W. 151, 2 Am. St. Rep. 738.

The contract was by its terms void ab initio; that is, it never went into effect. This does not mean that the contract was illegal and incapable of adoption or ratification. Upon the breach of the condition precedent, the contract by the force of its own terms became at once of no force and effect. Austin v. Mutual Reserve Fund Life Assn. (C. C.) 132 Fed. 555. This nullity resulted, not from any subsequent act of the company, but from facts which existed when the policy was issued. The facts which prevented it from attaching were at all times known to the insured, and when they became known to the insurer it was not called upon to do anything to invalidate the policy. The only duty which then rested upon the insurer was to do nothing, actively or otherwise, which would mislead the other party to the contract to his material injury. Whether it is the duty of the insurer to return the premiums is determined by various considerations. If the policy is wrongfully terminated by the insurer, it must return the premiums. McCall v. Phœnix, 9 W. Va. 237, 27 Am. Rep. 558. So, when the company becomes insolvent, unearned premiums are a claim against the insolvent estate. Smith v. National Credit Ins. Co., 65 Minn. 283, 68 N. W. 28, 33 L. R. A. 511; In re Minneapolis Mut. Fire Ins. Co., 49 Minn. 291, 51 N. W. 921; Clark v. Manufacturers, 130 Ind. 332, 30 N. E. 212. If the policy is illegal the premiums cannot be recovered (Howard v. Refuge, 54 L. T. [N. S.] 644; Lowry v. Bourdiau, 2 Douglas, 468, 14 English Rul. Cas. 533), unless the parties are not "in pari delicto." Harse v. Pearl, 73 L. J. K. B. 373; American v. Bertram, 163 Ind. 51, 70 N. E. 258, 64 L. R. A. 935.

If the policy is not illegal, and once attaches and the risk is assumed, the entire premium is earned, and if a forfeiture results from a breach of a promissory warranty or of a condition subsequent the insurer cannot be required to return any part of the premium. It is all earned when the risk attaches. Home v. Kuhlman, 58 Neb. 488, 78 N. W. 936, 76 Am. St. Rep. 111; U. S. Life Ins. Co. v. Smith, 92 Fed. 503, 34 C. C. A. 506; A. M. Todd Co. v. Farmers (Mich.) 100 N. W. 442; Alabama v. Long, 123 Ala. 667, 26 South. 655; Fulton v. Lancaster, 7 Ohio, 5, pt. 2; Merchants v. Clapp, 11 Pick. 56; Phœnix v. Stevenson, 78 Ky. 150; Mutual Life Ins. Co. v. Kelly, 114 Fed. 268, 52 C. C. A. 154; Dickerson v. Northwestern, 200 Ill. 270, 65 N. E. 694; Home v. Daubenspeck, 115 Ind. 306, 17 N. E. 601; Pearlstine v. Westchester, 70 S. C. 75, 49 S. E. 4; Norris v. Hartford, 55 S. C. 450, 33 S. E. 566, 74 Am. St. Rep. 765; Medley v. German, 55 W. Va. 342, 47 S. E. 101; Harris v. Scrivener (Tex. Civ. App.) 78 S. W. 705. But, if the policy never attaches because of a breach of a condition precedent, the insurer never assumes any risk of loss, and never earns any part of the premium. While there is some conflict of authority, we think that under such conditions the proper rule is that the insured, if he has not been guilty of fraud, is entitled to recover back what he has paid to the insurance company. As said in 2 May, Ins. (4th Ed.) § 567: "If a policy be void ab initio or if the risk never attaches and there is no actual fraud on the part of the insured, and the contract is not against law or good morals, though there may have been misrepresentation or breach of warranty, he may recover back all the premiums he may have paid, either in an action for them alone, or on a count for money had and received, coupled with a count on the policy in an action for the loss." Tyrie v. Fletcher, Cowp. 666; Feise v. Parkenson, 4 Taunt. 640; 14 Eng. Rul. Cas. 530; Stevenson v. Snow, 3 Burr. 1240; Foster v. U. S., 11 Pick. 85; Clark v. Manufacturers Ins. Co., 2 Woodb. & M. 472, Fed. Cas. No. 2,829; Insurance Co. v. Pyle, 44 Oh. St. 19, 4 N. E. 465, 58 Am. St. Rep. 781; Jones v. Insurance Co., 90 Tenn. 604, 18 S. W. 260, 25 Am. St. Rep. 706; Mulvey v. Gore, 25 U. Can. Q. B. 424; Georgia Home Ins. Co. v. Rosenfield, 95 Fed. 358, 37 C. C. A. 96; Fowler v. Scottish, 28 L. J. Ch. 225; Delavigne v. United, 1 Johns. Cas. 310. See Rochester

Ins. Co. v. Martin, 13 Minn. 54, (59), and authorities cited in Taylor v. Grand Lodge A. O. U. W., 96 Minn. 441, 105 N. W. 408.

In the case at bar the court ordered the receivers to return the premiums which had been paid, and the plaintiff thus received the full benefit of the rule. But it does not follow that it is the duty of the insurer to take affirmative action to find the insured and tender back the amount of the premiums which have been paid voluntarily before the insurer had knowledge of the breach of condition. Georgia Home Ins. Co. v. Rosenfield, supra; Austin v. Mutual R. F. L. Assn. (C. C.) 132 Fed. 555; Houdeck v. Merchants, 102 Iowa, 303, 71 N. W. 354. As noted in Taylor v. Grand Lodge A. O. U. W., supra, the case of Schreiber v. German-American Hail Ins. Co., 43 Minn. 367, 45 N. W. 708, is not an authority for the rule that the mere retention of the premium paid before notice of a breach of condition is conclusive evidence of an election to treat the policy as valid. Neither do the cases incidentally referred to by Chief Justice Gilfillan in that case sustain this proposition. In Fishbeck v. Phenix, 54 Cal. 422, there was present every element of a technical estoppel. The point is not decided in Harris v. Society, 64 N. Y. 196. In Baker v. New York Life Ins. Co. (C. C.) 77 Fed. 550, it appeared that the insurance company for a full year after knowledge of all the facts treated the policy as in force. Jones v. Insurance Co., supra, was an action by the insured to recover the premiums. See comment upon these cases, and Home v. Riel, 1 Monaghan, 615, 17 Atl. 36, in Georgia Home Ins. Co. v. Rosenfield, supra. In some state statutes have been enacted which require an insurance company to return all premiums which it has received as a condition precedent to interposing a defense on the ground that the policy was obtained by misrepresentations. Rev. St. Mo. 1879, § 5977; N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934; Civ. Code Cal. § 2617; and Acts Va. 1897, 1898, p. 636, c. 601 [Va. Code 1904, 638]; Vance, Ins. 245.

Virginia v. Cummings (Tex. Civ. App.) 78 S. W. 716, and Metropolitan v. Moore (Ky.) 79 S. W. 219, sustain the appellant's contention; but they rest upon what seems to us an erroneous theory. The rule there applied would be properly applicable in an action by an insurance company against the insured for the purpose of having the con-

tract rescinded. Neither is appellant's contention sustained by Mississippi v. Dobbins, 81 Miss. 630, 33 South. 504. In that case the premium was paid after the agent of the company had notice of the loss; and after notice of the additional insurance the company furnished blanks and allowed the insured to make proofs of loss. It was held that, under the circumstances and the terms of the policy with reference to the return of premiums upon cancellation of the policy, the company was estopped by its failure to return the unearned premium. Commercial v. New Jersey (N. J. Eq.) 49 Atl. 155, was a suit by the insurer to cancel the policy.

In this case the insurer is not asking to have the contract rescinded. The premium came into its possession lawfully under color of what was assumed to be a valid contract, and it cannot properly be placed in a position of withholding it until repayment has been demanded. It seems to us that it would be as reasonable to require the insured, when he learns that the insurer claims that the policy is invalid, to either accept the situation and demand a return of his payments or stand on what he assumes to be his rights and attempt to enforce them. A somewhat similar principle was applied in American v. Bertram, 163 Ind. 51, 70 N. E. 258, 64 L. R. A. 935. If he does not do this, it should not lie in his mouth to assert that the other party cannot be heard on its defense until it has tendered to him what he asserts that he has no right to receive, and will not or cannot accept without abandoning his entire claim for indemnity. The only logical course is to leave the parties where they are until their respective rights are determined. If the defendant prevails the plaintiff should have judgment for the return of his premiums. But the insurance company must be consistent. If it claims that the contract is not in force, it must not expressly or impliedly recognize it as effective. If the insured demands the return of what he has paid as premiums, it must comply with the demand if it claims that the risk never attached. If it refuses to return the money it places itself in a position which is inconsistent with an honest intention to avail itself of the breach of condition, and recognizes the contract as in force just as effectively as it would by accepting and retaining assessments or premiums after it had acquired knowledge that there had been a forfeiture. Having thus made its election, it will be held to

have subjected itself to all the liabilities which attach thereto. Even when knowledge of the breach of a condition is acquired before a loss occurs, the company is not, under our decisions, required to do any affirmative act.

In Johnson v. American Ins. Co., 41 Minn. 396, 43 N. W. 59, where the insured procured other insurance in violation of a condition which provided that the policy should be void if other insurance was obtained "without notice to and consent of this company in writing hereon," the court, through Justice Dickinson, said: "By the plain terms of the policy, other insurance without the consent of this company would ipso facto void the contract; and in the case of a contract thus avoided it would not be obligatory upon the insurer to repay any of the unearned premium, nor would he be required to give notice that he should insist upon and avail himself of the proper legal effect of the agreement. It required no affirmative act of election on the part of the company to make operative the clause avoiding the contract whenever the specified conditions should occur. Its obligations ceased, unless, being informed of the fact, it consented to the additonal insurance, or in some manner waived the forfeiture." To the same effect is Betcher v. Capital Fire Ins. Co., 78 Minn. 240, 80 N. W. 971.

There is even stronger reason for holding that this is the rule when the insured does not learn of the breach of conditions until after a loss. The rights of the parties have then been determined and fixed by the occurrence of the event insured against. The policy at the time of the loss was either null or in full force and effect. If it was not in force, the insurer is not liable for the loss, unless it prefers to remain silent and accept liability for reasons of general business policy. As the contract is not illegal, it is enforceable unless the insurer avails itself of its defense. If it simply remains silent and inactive, the claimant must then become the active party and assert his claim. The company must not, on the peril of creating an estoppel, mislead him, nor demand anything from him, or any action on his part, which it has no right to demand on any theory other than that the contract is in force. It need not tender back the premium unless it is demanded; but if the contract is not illegal or fraudulent, and the premium is demanded and not re-

turned, its retention is an election to consider the policy in force and the company is liable thereon.

4. We are unable to agree with the appellant's contention that the provisions of the contract are ambiguous and thus come within the principle applied in Central Montana Mines Co. v. Fireman's Fund Ins. Co., 92 Minn. 223, 99 N. W. 1120, 100 N. W. 3. The case turns upon two provisions, stated conjunctively in the policy. The entire contract shall be void (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of the insurance be a building on ground not owned by the insured in fee simple. The breach of either of these conditions invalidates the entire policy unless it can be held that the contract is divisible. There are many conflicting cases on this question, but Plath v. Minnesota Farmers Mut. Fire Ins. Assn., 23 Minn. 479, 23 Am. Rep. 697, established the rule in this state that, where the insurance is for a gross sum and a single consideration, the contract is entire, although the amount of the insurance is distributed over several distinct items of property. A contract of insurance of this character is entire and indivisible. The sole effect of the apportionment of the amount of the insurance upon the separate and distinct items of property named in the policy is to limit the extent of the insurer's risk as to each of such items to the sums specified. See Southern v. Knight, 111 Ga. 622, 36 S. E. 821, 52 L. R. A. 70, 78 Am. St. Rep. 216; Pratt v. Dwelling, 130 N. Y. 206, 29 N. E. 117; and note to Wright v. Fire Ins. Co., 12 Mont. 474, 19 L. R. A. 211.

The policy considered in the Plath case contained a provision that, in case the insured should mortgage the property without notifying the secretary of the company, "then the insured shall not be entitled to recover from the association any loss or damages which may occur in or to the property hereby insured or any part or portion thereof." The amount of the insurance was apportioned on a dwelling house, household furniture, carriages, farm implements, harvester, seeder, and threshing machine. Without notice to the company, as required by the policy, the insured placed a chattel mortgage on the harvester, seeder, and threshing machine. All the property was destroyed, and it was held that, as the contract was entire and indivisible, there could be no recovery for the loss or any part thereof. The case was cited

with approval in Funke v. Minnesota Farmers Mut. Fire Ins. Assn., 29 Minn. 347, 355, 13 N. W. 164, 43 Am. Rep. 216, and its application to this case disposes of the appellant's contention adversely. Central Montana Mines Co. v. Fireman's Fund Ins. Co., supra, turned upon the construction to be given the ambiguous use of the word "property" in the contract. The policy covered certain mining property, and a gross amount of insurance was apportioned upon different items of the property. The policy provided that it should become void if the "property" therein described should become unoccupied, inoperative, or vacant. The quartz mill only became vacant, and all the other buildings were occupied and used. It was held that, as the language was ambiguous, the word "property" should be construed to mean the whole plant.

There is another line of cases which apply the rule that a policy which insures various kinds of property, describes each class separately, and apportions different amounts upon each class, is not avoided by a breach of the contract as to any property included therein, except that affected by the forfeiture clause, unless the contract was induced by fraud, is contrary to public policy, or the breach of the condition in question increases the risk on the whole property. Where there is neither illegality, fraud, nor increase of risk, a recovery is, under these cases, permitted as to all the property not thereby directly affected. See Phenix v. Pickel, 119 Ind. 155, 21 N. E. 546, 12 Am. St. Rep. 393; McGowan v. People's Ins. Co., 54 Vt. 211, 41 Am. Rep. 843; Agricultural v. Hamilton, 82 Md. 88, 33 Atl. 429, 30 L. R. A. 633, 51 Am. St. Rep. 457; Stevens v. Queen, 81 Wis. 335, 51 N. W. 555, 29 Am. St. Rep. 905; Loomis v. Rockford, 77 Wis. 87, 45 N. W. 813, 8 L. R. A. 834, 20 Am. St. Rep. 96; Havens v. Home, 111 Ind. 90, 12 N. E. 137, 60 Am. Rep. 689; Miller v. Delaware, 14 Okl. 81, 75 Pac. 1121, 65 L. R. A. 173; Republic v. Johnson, 69 Kan. 146, 76 Pac. 419, 105 Am. St. Rep. 157; Taylor v. Anchor, 116 Iowa, 625, 88 N. W. 807, 57 L. R. A. 328, 93 Am. St. Rep. 261.

But the plaintiff in this case cannot recover on the policy in question even under this rule. The contract was not illegal, neither was it induced by fraud, but the character of the property and its location brings it clearly within one of the recognized exceptions. The condition with

reference to the title affected the building, and its breach increased the moral hazard of the risk. It is stipulated that the loss was on stock, machinery, boiler, and engine house. The buildings stood on leased ground. The stock and machinery were in the "building and additions" thereto. The boiler and engine house were apparently situated upon the same leased land, and adjacent to the main building. It is thus apparent that whatever increased the risk to the building inevitably increased the risk on all the other property that was destroyed. It thus comes clearly within the rule applied in Agricultural v. Hamilton, and Stevens v. Queen, supra.

The order appealed from is affirmed.