# William Hermann, Appellee, v. Court of Honor, Appellant.

## Gen. No. 6,001.

1. INSURANCE, § 233*—*when representations as to health constitute warranty.* The denial by a woman in an application for life insurance of previous illnesses or surgical operations, *held* warranties which avoided a policy, where prior thereto she had had pneumonia as well as a serious disorder of the ovaries and fallopian tubes, which necessitated a serious major surgical operation for their removal.

2. INSURANCE, § 363*—*when retention of premiums does not estop insurer from asserting avoidance of policy.* The failure of an insurance company to return, tender or to pay into court premiums paid by an insured during her lifetime until nine months after a denial of liability on a policy, because of her fraudulent misrepresentations in her application as to her condition of health, *held* not to estop the insurer from asserting the avoidance of the policy, where

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

it did not learn of such misrepresentations until after the death of the insured, when it immediately denied liability on that ground.

3. INSURANCE, § 363*—*when retention of premiums does not estop insurer from asserting avoidance of policy.* An insurance company does not by retaining after the death of an insured person, premiums paid by her in her lifetime, waive the right to assert in an action by the beneficiary, the avoidance of a policy of insurance for the fraudulent representations made by the insured in her application as to her condition of health, where the insurer did not learn thereof until after her death, and no administrator was thereafter appointed to whom the premiums could have been returned.

NIEHAUS, J., took no part in this decision.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the April term, 1915. Reversed with finding of facts. Opinion filed April 15, 1915. Rehearing denied June 11, 1915.

PAGE, HUNTER, PAGE & DALLWIG and WILLIAM B. RISSE, for appellant.

J. B. WOLFENBARGER and D. J. COWAN, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On April 7, 1911, Court of Honor, a beneficiary society, issued its certificate to Lucille Hermann, providing for the payment of $1,000 to her husband, William Hermann, upon satisfactory proofs of her death. She died on May 10, 1912. Proofs of death were furnished and under date of June 20, 1912, the society refused to pay the claim upon this certificate on account of misrepresentations in the application. On August 9, 1912, the husband brought this suit to recover the amount of such certificate. There was a declaration and many pleas, replications, rejoinders and sur-rejoinders. The *praecipe* filed by appellant for this record did not include all the pleadings and apparently they are not all in the record before us. Issue was joined on a rejoinder to "the additional replications of the plaintiff

filed herein on the 14th day of March, 1913," but we do not find in this record any replication filed on that date. We assume that that date is a clerical error or that the record contains all the pleadings which the parties consider material. There was a jury trial and a verdict for plaintiff for the face of the policy and interest, and a judgment thereon, and this is an appeal from said judgment.

The defense was that certain statements in the application were warranties and were untrue. The proofs showed without dispute that Mrs. Hermann had pneumonia, and that thereafter in 1908, she had a serious disorder of the ovaries and fallopian tubes, and finally it became necessary to take her to a hospital and to remove said organs by a major surgical operation. The application upon which this certificate was based did not reveal the existence of any of these disorders, but denied them. These statements were made warranties by the language of the application, but even if they had been representations only, they were material to the risk and their untruth made the certificate void from the first.

The sole reply to this is that Mrs. Hermann, during her lifetime, paid to the society $18.35 in dues and assessments, and that the society must have known of the falsity of said application by June 20, 1912, and did not tender said dues and assessments and the costs of court up to the time of tender until March 15, 1913, on which date it did tender and pay into court the full amount of said dues and the costs to that date, and the same has ever since remained in court for acceptance. Appellee contends that he who seeks to rescind a contract for fraud in its inception must return all that he has received thereon within a reasonable time after he discovers the fraud or he becomes bound by the contract, notwithstanding the fraud, and that the period of time from June 20, 1912, to March 15, 1913, was not a reasonable time within which to make said

tender, and that therefore appellee is entitled to re-
cover the full amount of this policy, nothwithstanding
the fraud. The court so modified instructions asked
by defendant as to make its liability depend upon
whether it made this tender within a reasonable time
after learning of the falsity of the application.

Appellant is not a plaintiff seeking to rescind a con-
tract. It is a defendant relying for its defense on the
very terms of the contract sued on, which relieved it
of all liability if material false statements were made
in the application.

On October 12, 1912, it filed pleas by which it set up
the falsity of various statements in the application as
a complete defense. Appellee did not reply to the
failure to return the premiums until September 10,
1913. The tender was made nearly six months before
that replication was filed, namely, on March 15, 1913,
and it has been kept good. We are of opinion that the
principle relied upon by appellee does not apply where,
as here, the untruth of the application was not ascer-
tained until after the death of the person whose life
was assured. The mere retention of the dues and as-
sessments, after the death had occurred, where the li-
ability is promptly denied, cannot constitute a waiver
or an estoppel, unless the other party has thereby been
put in a position, because of such delay, by which it
will be injured. In *Goorberg v. Western Assurance
Co.*, 150 Cal. 510, the court said:

"It may be conceded that if, by reason of a breach
of warranty as to title, no risk ever attached, the in-
sured was entitled to a return of his premium. * * *
But the insurer's delay in offering to repay it (assum-
ing the delay to have been unreasonable), did not for-
feit the right to defend for such breach. The cases
cited to the proposition that a party cannot rescind
a contract without restoring what he has received un-
der it are not in point. The defendant is not in this
action seeking to rescind the contract sued upon; it is

standing upon the contract, and insisting that under its terms there is no liability. Nor can the mere retention of the premium, after the loss had occurred, and where the liability is steadfastly denied, constitute either a waiver of the defense or an estoppel. To constitute such waiver or estoppel by the action or non-action of the insurer after the loss, it is essential 'that one party should have relied upon the conduct of the other, and been induced by it to put himself in such a position that he would be injured if the other should be allowed to repudiate his action.' * * * Here nothing was done which could have led the insured to believe that the defendant would not take advantage of the breach of warranty. On the contrary, it persistently asserted its reliance upon such breach.''

A similar question was very fully discussed and many cases cited by the Supreme Court of Minnesota, in the case entitled *In re Millers' & Manufacturers' Ins. Co.*, 97 Minn. 98, 4 L. R. A. (N. S.) 231. The following headnote states the conclusion of the court on this subject as follows:

''When a policy of insurance never attaches, and no risk is assumed, the insured may recover back the premiums, unless he has been guilty of fraud, or the contract is illegal and he is *in pari delicto*. But the insurer is not obliged to return, or offer to return, the premiums which have been paid voluntarily before notice of the fact that the policy is not in force, as a condition precedent to availing itself of its defense to an action on the policy.''

Nothing was done here to lead the insured to believe that the society would not take advantage of the falsity of the application, but, on the contrary, it has always since June 20, 1912, denied its liability on that ground. Appellee did not accept the tender, and it is clear he would not have done so if the tender had been made on June 20, 1912.

But further, to whom was this society under legal

duty to return this money when it discovered the falsity of those statements in the application after Mrs. Hermann died? The proof is that Mrs. Hermann paid all the dues and assessments herself. Appellee assumes that said payments should have been returned to appellee. On the contrary, as the contract was void in its very inception, because of said fraud, the money she paid belonged to Mrs. Hermann, and, when the fraud was discovered after her death, the return of the dues and assessments could only lawfully be made to the administrator or executor of her estate. It was proved that up to the time of the trial there had been no such administration. Suppose some creditor of Mrs. Hermann should now take out administration for the benefit of creditors. The society would be bound to return said dues and assessments to such administrator. The proof showed that she left no will and no descendants. Appellee therefore was the sole heir at law of her personal estate. But there was no proof that Mrs. Hermann owed no debts, and without such proof the heir at law could not be entitled to her personal estate without administration. *Leamon v. McCubbin,* 82 Ill. 263; *People for use of McKee v. Abbott,* 105 Ill. 588; *Cotterell v. Coen,* 246 Ill. 410. Even if the heir at law may lawfully receive this money, after this lapse of time, on some presumption that Mrs. Hermann left no debts, certainly appellant had a right to wait to see whether she did leave debts requiring administration and whether letters of administration would be taken out. As the proofs now stand, if appellant had made no tender it would be a sufficient reply to the alleged estoppel, that no administrator had been appointed to whom appellant could safely pay the money. Let us test this in another way. Suppose that there were an administrator, and that the society had filed a bill of interpleader stating the issue of the certificate and payment by Mrs. Hermann of a certain sum as dues and assessments thereon, and her death, and that the

society then learned that because of material false representations in her application the policy was void *ab initio* and that the company desired to return said dues and assessments but that they were claimed both by the administrator and by the beneficiary, and the court should direct the fund to be paid into court, and that the administrator and the beneficiary should interplead, and they should each plead claiming the fund. Upon proof that the deceased paid all the dues and assessments, must not the court award the fund to the administrator? We are unable to see how any other conclusion can be reached. Not only was what was said on this subject in *Dickerson v. Northwestern Mut. Life Ins.* Co., 200 Ill. 270, unnecessary to the decision of the case, for there the contract of insurance was not void *ab initio,* but had always been in force until deceased violated it by committing suicide, but also the beneficiary there had paid all the premiums, and if they were required to be refunded to any one, it must be to the plaintiff there, who had herself paid them. The question to whom return should be made is not discussed in *McCurrey v. Metropolitan Life Ins. Co.,* 168 Ill. App. 625, and we regard it as not really decided in *Central Acc. Ins. Co. v. Spence,* 126 Ill. App. 32. A question similar to that which we are now considering was presented in *Thompson v. Travelers' Ins. Co.,* 11 N. D. 274. The court there said: "There is another reason in this case why the company has waived no right by retaining the premium. The deceased paid the premium. It was his money. If the company was bound to return this premium, it could not have been returned to the insured. There is no evidence that any administrator or executor was appointed for his estate. To whom could the company safely return the money? The record does not show that it could have been returned to any one without incurring the risk of having to pay it again to the legal representative of the deceased when appointed.

*   *   *   We decline to go to the extent of holding that premiums received in ignorance of violations of policy stipulations and without knowledge thereof, until after the death of the person paying them, constitute a waiver of defenses in an action on the policy, when such premiums could not have been returned to any one lawfully entitled to receive them.''

In the case at bar we are unable to hold that because this society did not immediately return to the husband $18.35 and costs, which it did, however, tender to him some fourteen months before the trial, and kept said tender good, and he refused to receive it, he thereby became entitled to recover over $1,000 upon a fraudulent claim.

As the only question argued here is whether the failure to make said tender more promptly permits a recovery upon this contract, which was otherwise void *ab initio* for fraud, and as we determine that question against appellee, we see no reason for remanding the cause. The judgment is therefore reversed.

*Reversed with finding of facts.*

Mr. Justice Niehaus took no part in this decision.

Finding of facts to be incorporated in the judgment. We find that the benefit certificate here sued upon was void in its inception because of material false representations and breaches of warranty by Lucille Hermann, the party whose life was insured, and that the society did not learn of that fraud until after her death, and that there was no such delay by the society in tendering back the dues and assessments she paid and costs of court as to prevent the society from availing of that defense.